769 A.2d 948

Sisir K. DUTTA

v.

STATE FARM INSURANCE COMPANY.

No. 85, Sept. Term, 2000.

Court of Appeals of Maryland.

April 10, 2001.

Reconsideration Denied June 1, 2001.

Brian R. Frank, Rockville, on brief, for petitioner.

Leonard C. Redmond, III, Baltimore, on brief, for respondent.

Argued before BELL, C.J., and ELDRIDGE, RAKER, WILNER, CATHELL, HARRELL and BATTAGLIA, JJ.

CATHELL, Judge.

In March of 1997, petitioner, Dr. Sisir K. Dutta, had at least two insurance policies—one was an automobile policy with respondent, State Farm Mutual Automobile Insurance Company (State Farm), and the other was a health insurance policy with an HMO, NYLCare. After being involved in an automobile accident on March 27, 1997, petitioner received medical

treatment, which was initially paid for by NYLCare. Petitioner filed a claim against the third party driver's liability insurer. Upon receiving a settlement check for this claim, petitioner reimbursed NYLCare pursuant to the HMO's alleged right of subrogation included in petitioner's policy agreement with NYLCare. Petitioner then submitted a claim for the amount paid for his treatment under his Personal Injury Protection (PIP) coverage, which was subsequently denied by State Farm. Petitioner presented one question to this Court for which we granted certiorari. We rephrase the question in order to properly address the issues presented:

> Does the PIP coverage at issue require State Farm to pay for petitioner's medical treatment, even though petitioner's health care provider and/or a third party, tortfeasor, actually paid the medical bills? [1]

We answer the question in the affirmative. We hold that the Circuit Court erred in finding that the expenses arising out of the medical treatment petitioner received at Suburban Hospital, which were initially paid for by NYLCare, were not an incurred expense for which petitioner was entitled to recover from his Personal Injury Protection coverage. We hold that the expense was incurred. Accordingly, we reverse the judgment of the Circuit Court for Montgomery County.

## I. Facts[2]

On March 27, 1997, petitioner was injured when his vehicle was involved in an accident in Washington, D.C. At the time of the accident, petitioner was insured by a personal automo-

---

1. The actual question presented was:

    Whether the Circuit Court for Montgomery County erred in finding that monies paid by the Petitioner to his Health Maintenance Organization (hereinafter referred to as "HMO") under a subrogation clause in the HMO agreement with the Petitioner were not an "incurred" expense by Petitioner for which Petitioner was entitled to recover from his Personal Injury Protection coverage[?]

2. Respondent has alleged that some of the facts asserted by petitioner are not supported by evidence in the record. The extent, if any, to which we rely on these facts is merely for the purpose of background and does not affect our holding.

bile policy through State Farm, which included PIP coverage in the amount of $10,000. He was also a member of an HMO, NYLCare, through his employer, Howard University. Petitioner underwent examination and treatment for his injuries on the day of the accident in the Emergency Room at Suburban Hospital.[3] Upon being treated at the hospital, he signed a "Consent to Treat" form, which included a clause entitled "Agreement to Pay for Services." [4]

Approximately one to two months prior to the automobile accident, petitioner had suffered a heart attack for which he had received medical treatment. Because of this prior treatment, Suburban Hospital had his HMO information already on record. Unbeknownst to petitioner, Suburban Hospital and the other medical providers offering services at Suburban Hospital, submitted a claim for payment to petitioner's HMO, NYLCare, in the amount of $941.84, which was subsequently paid by the HMO to the hospital.

On or about May 8, 1997, petitioner filed a claim with State Farm for payment of expenses relating to the treatment he received at Suburban Hospital for injuries sustained by him in the accident. State Farm paid $1995.00, an amount that constituted the copayment owed by petitioner to NYLCare under his HMO membership agreement; however, it withheld reimbursement of $941.84, the amount in excess of his copay for the emergency room treatment at Suburban Hospital, because that amount had been paid by NYLCare pursuant to the terms of the HMO membership agreement.

---

**3.** In Suburban Hospital, he received treatment from Suburban Hospital as well as other providers: Groover, Christie, & Merritt provided X-rays, Suburban EKG Interpreters provided an EKG, and Emergency Phys. Bethesda provided other emergency room treatment.

**4.** The clause provides:

I(we) accept responsibility for payment of hospital and physician services covering hospitalization or treatment of the below named patient [petitioner]. If payment is not made and additional collections efforts are required, I hereby agree to pay all bills rendered for said patient together with all collection costs, interest fees, and reasonable attorney's fees of 35% of the balance due. I understand that all bills are payable and become due upon presentation.

By letter dated December 12, 1997, Healthcare Recoveries, Inc. (Healthcare)[5] provided petitioner's attorney with an "updated Consolidated Statement of the total benefits paid/incurred by [his] client's Health Plan to date." The statement attached to the letter indicated a balance due in the amount of $941.84, a claim for services provided when petitioner was treated at the Suburban Hospital emergency room on March 27, 1997. By letter dated December 19, 1997, petitioner's attorney again requested benefits from State Farm and forwarded State Farm a copy of the letter from Healthcare accompanied by an earlier letter dated September 2, 1997, in which Healthcare requested reimbursements from petitioner for payments made by NYLCare to Suburban Hospital. State Farm advised petitioner that it would not pay him the $941.84 under his PIP coverage.

Petitioner had also filed a claim against the third party driver's liability insurer with regard to his bodily injuries. That case was settled. In connection with the settlement against the third party driver, NYLCare notified petitioner's attorney of petitioner's alleged subrogation responsibilities under the Member Agreement. On December 29, 1997, petitioner, through his attorney, paid NYLCare $941.84 pursuant to the subrogation clause of the Member Agreement.[6]

On March 22, 1999, having never received any funds from State Farm in respect to PIP coverage and almost two years after the injuries giving rise to the treatment costs were incurred, petitioner filed an action against State Farm in the District Court of Maryland sitting in Montgomery County, alleging that State Farm had failed to comply with the Personal Injury Protection provisions contained in petitioner's policy. State Farm filed a Notice of Intention to Defend and Demand Proof denying liability. The District Court awarded judgment

---

**5.** Apparently, Healthcare is a collection entity for NYLCare.

**6.** The legality of that provision is not relevant to the issues before the Court.

in the amount of $941.84 plus pre-judgment interest of $494.55 and costs of $28.20 in favor of petitioner.

On January 13, 2000, State Farm filed a Notice of Appeal pursuant to Maryland Rule 7–104 and this matter was transferred to the Circuit Court for Montgomery County. State Farm filed a Motion to Dismiss or in the Alternative for Judgment in which it argued: (1) that NYLCare was statutorily prohibited from recovering medical expenses from its members in excess of deductibles or copays and, therefore, petitioner did not incur medical expenses; (2) that to require PIP insurers to provide benefits for covered services contravenes the express intention of the Legislature; and (3) that State Farm is not statutorily obligated to coordinate its benefits with HMOs. Petitioner filed a Response to the Motion to Dismiss or for Judgment as well as a Motion for Summary Judgment in which he argued that: (1) NYLCare was entitled to reimbursement; (2) State Farm was both contractually and statutorily required to pay petitioner for the expenses he incurred as a result of his payment to NYLCare; and (3) the Maryland Legislature, by enacting Senate Bill 903 in 2000, allowed for the HMO to recover, through subrogation, monies paid to petitioner by a third party.

On July 10, 2000, the Circuit Court granted the Motion for Judgment filed by State Farm. In doing so, the Circuit Court said:

> Okay. I have had occasion to review all of the pleadings and to consider the arguments of Counsel, and while it does appear to me that it is somewhat unfair I have to say that I end up being more persuaded by the logic of Mr. Redmond's [State Farm's attorney] arguments in that I don't believe that the expense in this case was an expense that Dr. Dutta incurred within the meaning of the statute, and therefore, I do not believe that there is an obligation for the PIP carrier to pay it.
>
> . . . .

My sympathies are with you, but logic tells me that Mr. Redmond is probably correct and that this is what the legislature had intended.

As we indicated earlier, we disagree and, therefore, reverse the judgment of the Circuit Court.

## II. Analysis

To resolve the issue before this Court, we must ascertain whether the cost of the emergency treatment petitioner received while at Suburban Hospital was an incurred expense for which petitioner was entitled to recover from his PIP coverage through State Farm.[7] Our decision is controlled by Maryland Code (1995, 1997 Vol.), Title 19, subtitle 5 of the Insurance Article,[8] and the express language of petitioner's State Farm policy.

### a. Background

Before discussing the issue at bar, we feel it is helpful to define the purpose behind the passage of PIP legislation in Maryland. PIP coverage was first enacted by the Maryland Legislature in 1972 in order "to offer those injured in an 'incident' with an automobile to have 'quick' no-fault compensation for medical bills and lost wages up to a minimum amount, generally $2,500." Robert H.B. Cawood, *Personal*

---

7. Both parties attempt to make this case more difficult and involved than it need be. Because we hold that the expenses were incurred upon petitioner's receiving treatment for which charges were made, we do not need to address the legality of subrogation clauses or any possible non-compliance with the Employee Retirement Income Security Act of 1974 (ERISA).

8. Title 19, subtitle 5 of the Insurance Article ... sets forth the kinds of primary coverages that motor vehicle insurers are required to offer in Maryland policies. There are three such coverages: PIP benefits, provided for in §§ 19–505 through 19–508; uninsured/underinsured motorist coverage, provided for in §§ 19–509 through 19–511; and collision coverage, provided for in § 19–512. We are concerned here with the PIP coverage.
*MAIF v. Perry*, 356 Md. 668, 671, 741 A.2d 1114, 1115–16 (1999). Any reference to sections 19–505, 19–506, 19–507, 19–508, or 19–513 is a reference to the 1997 Replacement Volume.

*Injury Protection—A Primer,* 2 (MICPEL) (2000). We said in *Insurance Commissioner v. Property & Casualty Insurance Guaranty Corporation,* 313 Md. 518, 532, 546 A.2d 458, 465 (1988) "that one of subtitle 35's [9] fundamental aims is the speedy provision of PIP benefits without the lengthy delays entailed by tort litigation. Such prompt payment is a basic purpose of no-fault insurance generally." We have additionally noted on numerous occasions that "[t]he primary purpose [behind requiring PIP coverage] is to assure financial compensation to victims of motor vehicle accidents without regard to the fault of a named insured or other persons entitled to PIP benefits." *Pennsylvania Nat'l Mut. Casualty Ins. Co. v. Gartelman,* 288 Md. 151, 154, 416 A.2d 734, 736 (1980); *see Smelser v. Criterion Ins. Co.,* 293 Md. 384, 393, 444 A.2d 1024, 1029 (1982) ("The purpose of [PIP legislation was] to put a limited amount of money in the hands of an injured individual under certain circumstances without regard to whether another person is liable for the injuries which the claimant sustained."); *see also Bishop v. State Farm,* 360 Md. 225, 230, 757 A.2d 783, 785 (2000); *Clay v. GEICO,* 356 Md. 257, 265–66, 739 A.2d 5, 10 (1999); *Tucker v. Fireman's Fund Ins. Co.,* 308 Md. 69, 75–76, 517 A.2d 730, 733 (1986). Additionally, in *Insurance Commissioner,* 313 Md. at 532, 546 A.2d at 465, we noted "[t]his accent on rapid payment cannot be reconciled with an interpretation of section 512(a) [10] requiring an injured party

---

**9.** This is a reference to Maryland Code (1957, 1986 Repl.Vol.), Article 48A, subtitle 35, which included sections 538 through 547A, sections which were generally recodified into Maryland Code (1995, 1997 Repl. Vol.), Title 19, subtitle 5 of the Insurance Article by 1996 Maryland Laws, Chapter 11.

**10.** Section 512(a) was recodified into Maryland Code (1995, 1997 Vol.), section 9–310 of the Insurance Article by 1996 Maryland Laws, Chapter 11 "without substantive change." Prior to recodification, section 512(a) stated:

Any person having a covered claim against an insurer, including surety, under any provision in an insurance policy or surety bond, other than a policy of an insolvent insurer which is also a covered claim, shall be required to exhaust first his right under such policy or bond. Any amount payable on a covered claim under this subtitle

to exhaust third party liability claims before recovering any PIP benefits from PCIGC." PIP coverage, by its very design, attempts to avoid delays in providing monetary relief to automobile accident victims.[11]

### b.  Section 19–507

■ Crucial to this analysis is section 19–507(a), which outlines when such PIP payments are payable.  It provides:

(a) *When benefits payable.*—The benefits described in § 19–505 of this subtitle shall be payable without regard to:

. . . .

(2) any collateral source of medical, hospital, or wage continuation benefits.

We start our analysis with a discussion of statutory construction.  When attempting to discern the intention of the Legislature in enacting a particular statute, we recently said in *Edgewater Liquors, Inc. v. Liston,* 349 Md. 803, 709 A.2d 1301 (1998):

"In construing the meaning of a word in a statute, the cardinal rule is to ascertain and carry out the real legislative intention."  Legislative intent generally is derived from the words of the statute at issue.  "We are not constrained, however, by ... 'the literal or usual meaning' of the terms

---

shall be reduced by the amount of any recovery under such insurance policy or surety bond.

**11.**  Therefore, State Farm's argument that it is not responsible to compensate for PIP benefits when the cost of treatment is covered by an insured's primary health coverage can be seen as contrary to public policy.  As we discussed, *supra* and *infra,* the general statutory scheme behind sections 19–505 through 19–507 is to provide quick no-fault compensation without the delay of court proceedings.  Under State Farm's rationale, a primarily liable PIP insurer might be tempted to delay in the provision of benefits in the hope that an HMO or other health insurance provider will pay the claim, as petitioner's HMO did in the case at bar.  Under respondent's view, this would relieve respondent of its obligation to pay PIP benefits.  Because this practice could possibly lead to the delay of quick no-fault compensation to victims of automobile accidents, it is clearly contrary to the public policy favoring prompt payment of PIP benefits.  *See Bishop v. State Farm,* 360 Md. 225, 238, 757 A.2d 783, 790 (2000).

at issue." "Furthermore, we do not read statutory language 'in isolation or out of context [but construe it] in light of the legislature's general purpose and in the context of the statute as a whole.'"

*Id.* at 807–08, 709 A.2d at 1303 (internal citations omitted) (alteration in original). We commented in an earlier case:

When we pursue the context of statutory language, we are not limited to the words of the statute as they are printed in the Annotated Code. We may and often must consider other "external manifestations" or "persuasive evidence," including a bill's title and function paragraphs, amendments that occurred as it passed through the legislature, its relationship to earlier and subsequent legislation, and other material that fairly bears on the fundamental issue of legislative purpose or goal, which becomes the context within which we read the particular language before us in a given case.

... Thus, in *State v. One 1983 Chevrolet Van,* 309 Md. 327, 524 A.2d 51 (1987), .... [a]lthough we did not describe any of the statutes involved in that case as ambiguous or uncertain, we did search for legislative purpose or meaning—what Judge Orth, writing for the Court, described as "the legislative scheme." .... *See also Ogrinz v. James,* 309 Md. 381, 524 A.2d 77 (1987), in which we considered legislative history (a committee report) to assist in construing legislation that we did not identify as ambiguous or of uncertain meaning.

*Kaczorowski v. Mayor & City Council of Baltimore,* 309 Md. 505, 514–15, 525 A.2d 628, 632–33 (1987); *see Laznovsky v. Laznovsky,* 357 Md. 586, 606–07, 745 A.2d 1054, 1065 (2000); *State v. Bell,* 351 Md. 709, 717–19, 720 A.2d 311, 315–16 (1998); *see also Williams v. Mayor & City Council of Baltimore,* 359 Md. 101, 115–17, 753 A.2d 41, 48–49 (2000); *Riemer v. Columbia Medical Plan,* 358 Md. 222, 235–36, 747 A.2d 677, 684–85 (2000).

The mandatory language of section 19-507(a) emphasizes that petitioner can recover from his HMO, NYLCare, as

well as PIP benefits from his automobile insurer, State Farm. "The benefits described in § 19-505 of this subtitle *shall be payable without regard to . . . any collateral source of medical, hospital, or wage continuation benefits.*" (Emphasis added.)  The Legislature could not have expressed its intent any clearer—an insurer must pay PIP benefits *regardless of any collateral source of benefits*—i.e., regardless of whether a health insurance provider, HMO, or other collateral source provides benefits.[12]  NYLCare's coverage of petitioner's medical bills for his treatment at Suburban Hospital is exactly this—a collateral source of medical and hospital benefits.  If the Legislature had meant to exclude members of HMOs that provide collateral benefits from PIP coverage, language to that effect would have been included in either section 19-505, section 19-507, or section 19-513.  To interpret this language in any other way would render section 19-507(a)(2) meaningless.  When we examine the plain meaning of the words of a statute, "[o]ur examination of such words is guided by the principle that we should read 'pertinent parts of the legislative language together, giving effect to all of those parts if we can, and rendering no part of the law surplusage.'"  *Holman v. Kelly Catering, Inc.,* 334 Md. 480, 485, 639 A.2d 701, 704 (1994) (quoting *Sinai Hosp. v. Department of Employment,* 309 Md. 28, 40, 522 A.2d 382, 388 (1987)); *see Giant Food, Inc. v. Department of Labor,* 356 Md. 180, 194, 738 A.2d 856, 863 (1999).  State Farm's argument that petitioner cannot recover both PIP benefits and collateral medical and hospital benefits demonstrates complete disregard for the plain language of section 19-507.

Moreover, *State Farm v. Insurance Commissioner,* 283 Md. 663, 392 A.2d 1114 (1978) involved facts that, with one important statutory exception, were remarkably similar to the facts at issue here.  Patrick Morris, the insured in that case, was injured by a tortfeasor while he was driving his own vehicle at work.  He sought, and received, "workmen's" compensation

---

12.  Except for worker's compensation benefits.  See our discussion of the worker's compensation exception, *infra.*

benefits. Subsequently, Morris received a settlement from the negligent third party. Out of that settlement, he reimbursed the "workmen's" compensation carrier. He then filed a claim for PIP benefits from State Farm. State Farm reduced the amount of his benefits by the amount he had reimbursed the compensation carrier. Morris argued that because he had reimbursed the carrier, "he had not 'recovered' workmen's compensation benefits within the meaning of § 543(d) [13]." *Id.* at 666, 392 A.2d at 1115.

There we held, because of the express provisions in section 539(d) relating to workmen's compensation, Morris was *not* entitled to recover PIP benefits to the extent he had recovered workmen's compensation benefits. In contrast, Title 19, subtitle 5 contains no exception for HMO benefits or reimbursements. The statute applicable to the case *sub judice* states that PIP benefits are payable "without regard to ... any collateral source of medical, hospital, or wage continuation benefits." As evidenced by section 19–513(e), the Legislature has clearly demonstrated that it knows how to exempt certain benefits from the requirement for payment of PIP benefits. It has elected to do so in respect to worker's compensation benefits; however, it has not elected to do so in respect to HMO benefits. As we noted in *West American Insurance Company v. Popa*, 352 Md. 455, 475, 723 A.2d 1, 10–11 (1998):

This Court has consistently held that exclusions from statutorily mandated insurance coverage not expressly authorized by the Legislature generally will not be recognized. *See, e.g., Enterprise v. Allstate*, 341 Md. 541, 547, 671 A.2d

---

**13.** In 1978, Article 48A, section 543(d) was the code provision dealing with "Receipt of benefits under worker's compensation laws." The provision is currently codified in section 19–513(e) of the Insurance Article and is titled "Reduction due to workers' compensation benefits." Section 19–513 of the Insurance Article, in respect to worker's compensation benefits, limits the recovery of PIP benefits and specifically prohibits duplicate and supplemental benefits. As we discuss, *infra*, other than the benefits expressly covered by the section, section 19–513 does not apply to "any collateral source of medical, hospital, or wage continuation benefits" such as the benefits provided by NYLCare in the case *sub judice*.

509, 512 (1996) ("Where the Legislature has mandated insurance coverage, this Court will not create exclusions that are not specifically set out in the statute"); *Van Horn v. Atlantic Mutual,* 334 Md. 669, 686, 641 A.2d 195, 203 (1994) ("this Court has generally held invalid insurance policy limitations, exclusions and exceptions to the statutorily required coverages which were not expressly authorized by the Legislature"); *Allstate Ins. Co. v. Hart,* 327 Md. 526, 531–532, 611 A.2d 100, 102 (1992); *Larimore v. American Ins. Co.,* 314 Md. 617, 622, 552 A.2d 889, 891 (1989); *Nationwide Mutual Ins. Co. v. USF & G,* 314 Md. 131, 141, 550 A.2d 69, 74 (1988); *Gable v. Colonial Ins. Co.,* 313 Md. 701, 704, 548 A.2d 135, 137 (1988) ("As a matter of statutory construction, where the Legislature has required specified coverages in a particular category of insurance, and has provided for certain exceptions or exclusions to the required coverages, additional exclusions are generally not permitted"); *Lee v. Wheeler,* 310 Md. 233, 239, 528 A.2d 912, 915 (1987) ("we will not imply exclusions nor recognize exclusions beyond those expressly enumerated by the legislature"); *Jennings v. Government Employees,* 302 Md. 352, 358–359, 488 A.2d 166, 169 (1985) ("we will not insert exclusions from the required coverages beyond those expressly set forth by the Legislature"); *Nationwide Mutual Ins. v. Webb, supra,* 291 Md. [721,] 730, 436 A.2d [465,] 471 ("conditions or limitations in an uninsured motorist endorsement, which provide less than the coverage required by the statute, are void"); *Pennsylvania Nat'l Mut. v. Gartelman,* 288 Md. 151, 160–161, 416 A.2d 734, 739 (1980).

The rules of statutory construction relating to statutory provisions that create exceptions or exemptions from other statutory provisions reinforces our view that no other exceptions were intended. It is not our proper function to add to the statute another class of exemptions. That is a legislative function.

Payment of the medical expenses arising out of petitioner's automobile accident by NYLCare does not absolve respondent of its duty under the statute to provide PIP benefits to

petitioner. In the case *sub judice,* respondent was statutorily mandated by section 19–507 to provide PIP benefits to petitioner regardless of the fact that he also received health insurance benefits from his HMO, NYLCare.

### c. Section 19–505 and State Farm's Policy

■ Section 19–505, titled **"Personal injury protection coverage—In general,"** is also helpful in our analysis. It provides in relevant part:

(a) *Coverage required.*—Unless waived in accordance with § 19–506 of this subtitle, each insurer that issues, sells, or delivers a motor vehicle liability insurance policy in the State *shall provide coverage* for the medical, hospital, and disability benefits described in this section for each of the following individuals:

(1) except for individuals specifically excluded under § 27–606 of this article:

(i) *the first named insured,* and any family member of the first named insured who resides in the first named insured's household, who is injured in any motor vehicle accident, including an accident that involves an uninsured motor vehicle or a motor vehicle the identity of which cannot be ascertained....

. . . .

(b) *Minimum benefits required.*—

. . . .

(2) The minimum medical, hospital, and disability benefits provided by an insurer under this section *shall include* up to $2,500 for:

(i) payment of all reasonable and necessary expenses that arise from a motor vehicle accident and *that are incurred* within 3 years after the accident for necessary prosthetic devices and ambulance, dental, funeral, hospital, medical, professional nursing, surgical, and x-ray services.... [Some emphasis added.]

1996 Maryland Laws, Chapter 11 enacted section 19–505 with "new language derived without substantive change from former Art[icle] 48A, [sections] 545, 538(d) and (e), and 539(a)

through (d)." The relevant language of section 19–505 remains unchanged from its original form, which provided:

No policy of motor vehicle liability insurance shall be issued, sold or delivered in this State after January 1, 1973, unless the policy also affords the minimum medical, hospital and disability benefits set forth herein. . . . The benefits, or their equivalent, shall cover the named insured. . . . The minimum medical, hospital and disability benefits shall include up to an amount of $2,500, for payment of all reasonable expenses arising from the accident and incurred within three years from the date thereof for necessary medical, surgical, x-ray and dental services. . . .

Md.Code (1957, 1972 Repl.Vol., 1978 Cum.Supp.), Art. 48A § 539(a).

It is clear from the plain language of section 19–505 and the language of its predecessor, section 539, that automobile insurers who provide services in Maryland are mandated to provide coverage for the medical, hospital, and disability benefits for individuals identified as first named insureds on their policies except if waived by the insured.[14] The Legislature included mandatory language to require insurers to at least offer PIP coverage to potential insureds. The intent of the Legislature is clear—that unless waived by the insured, PIP benefits are to be provided to cover appropriate expenses arising out of a motor vehicle accident, which are incurred within a certain time period.

At the time of the accident, petitioner had a current automobile policy with respondent, in which he was the first named insured. The policy was paid for and in effect at the time of the accident on March 27, 1997. By design, with regard to PIP coverage, State Farm's policy follows the language of section 19–505.[15] The policy provides:

---

**14.** Waiver of PIP coverage by an insured is controlled by section 19–506. Waiver is not an issue in the case at bar.

**15.** As we discuss, *infra,* note 18, insurance companies tend to mirror the language outlined in each individual State's respective PIP coverage statute.

We will pay in accordance with the *No–Fault Act* for *bodily injury* to an *insured,* caused by a *motor vehicle* accident, for:

1. **Medical Expenses.** Reasonable charges incurred within three years after the date of the accident for necessary:

    a. medical, surgical, X-ray, dental, ambulance, hospital and professional nursing services;

    b. eyeglasses, hearing aids and prosthetic devices; and

    c. funeral services.

In *Cheney v. Bell National Life Insurance Company,* 315 Md. 761, 766, 556 A.2d 1135, 1138 (1989), we discussed the applicable rules of construction of insurance contracts, stating in part: "In the interpretation of the meaning of an insurance contract, we accord a word its usual, ordinary and accepted meaning unless there is evidence that the parties intended to employ it in a special or technical sense." In that vein, insurance contracts are construed as ordinary contracts. *Litz v. State Farm,* 346 Md. 217, 224, 695 A.2d 566, 569 (1997); *North River Ins. Co. v. Mayor & City Council of Baltimore,* 343 Md. 34, 39–40, 680 A.2d 480, 483 (1996). Maryland does not follow the rule that insurance policies should, as a matter of course, be construed against the insurer. *Collier v. MD–Individual Practice Ass'n,* 327 Md. 1, 5, 607 A.2d 537, 539 (1992); *Empire Fire & Marine Ins. Co. v. Liberty Mut. Ins. Co.,* 117 Md.App. 72, 97, 699 A.2d 482, 494, *cert. denied,* 348 Md. 206, 703 A.2d 148 (1997). Instead, ordinary principles of contract interpretation apply. *Kendall v. Nationwide Ins. Co.,* 348 Md. 157, 165, 702 A.2d 767, 770–71 (1997); *Empire Fire,* 117 Md.App. at 97, 699 A.2d at 493. Accordingly, if no ambiguity in the terms of the insurance contract exist, a court has no alternative but to enforce those terms. *Kendall,* 348 Md. at 171, 702 A.2d at 773. "Nevertheless, under general principles of contract construction, if an insurance policy is ambiguous, it will be construed liberally in favor of the insured and against the insurer *as drafter of the instrument.*" *Em-*

*pire Fire,* 117 Md.App. at 97–98, 699 A.2d at 494 (emphasis in original).

## Defining "Incur"

The rationale upon which the Circuit Court based its ruling and one of the principal arguments that respondent makes in its brief to this Court is that because NYLCare, as petitioner's HMO, paid the costs of petitioner's hospitalization, petitioner never "incurred" any costs and thus does not warrant PIP benefits under the State Farm policy and pursuant to section 19–505. We disagree with this argument. *Black's Law Dictionary* 768 (6th Ed.1990) defines "incur" as "[t]o become liable or subject to, to bring down upon oneself, as to incur debt, danger, displeasure and penalty, and to become through one's own action liable or subject to." Pursuant to this definition, expenses were incurred on petitioner's behalf at Suburban Hospital through treatment arising out of injuries sustained in an automobile accident when he received treatment at the hospital and/or, as we discussed, *supra,* he signed the agreement to pay for services and was subsequently provided medical care by Suburban Hospital.[16] *See supra,* note 3. Looking at the precise wording of both section 19–505(b) and the State Farm policy—neither expressly defines *who* needs to incur the expense. Both merely express that an expense must be "incurred." This language presents to us one of the primary issues of the case at bar, an issue of first impression for this Court [17]—whether the statute requires that

---

**16.** We do not mean to imply that whether an individual incurs expenses depends on whether that individual signed an agreement to pay. We merely point out that, under the facts of the case *sub judice,* petitioner acknowledged his personal financial responsibility for the hospital expenses when he signed the Consent to Treat form.

**17.** Although we have not had an opportunity to directly address the meaning of the word "incurred" in the context of this statute, the position we took in respect to damages in a negligence case we decided in 1954 is instructive. In *Plank v. Summers,* 203 Md. 552, 102 A.2d 262 (1954), three members of the United States Navy were injured in an automobile accident on U.S. Route 301 in Prince George's County. They were subsequently treated for their injuries at the National Naval

it be the *insured* who must pay the expense in order for the insured's PIP coverage to apply. We hold that it does not.

A number of our sister states have had the opportunity to directly address whether the value of medical services provided by an HMO or other health care provider constitutes an "incurred" expense under the medical payments clause of a motor vehicle insurance policy. One leading case is *Kopp v. Home Mutual Insurance Company*, 6 Wis.2d 53, 94 N.W.2d 224 (1959). In that case, Herman Kopp was injured in an automobile accident. He was hospitalized and his expenses were paid for by Blue Cross with whom he had a health insurance policy. He later submitted the equivalent of a PIP claim to Home Mutual, with whom he had automobile insur-

---

Hospital. Because they received medical treatment without charge due to their membership in the Armed Services, the trial court ruled that they "could not recover compensatory damages for services for which they were not required to pay...." *Id.* at 555, 102 A.2d at 263. At issue in *Plank* was "whether the jury should have been allowed to consider and to award [Plank *et. al.*], the reasonable value of the hospital and medical services rendered to them without charge or imposition of liability by a United States Navy hospital." *Id.* at 556, 102 A.2d at 264. We observed:

> Here also it might well be considered that medical and hospital services supplied by the Government to these members of the United States Navy were part of the compensation to them for services rendered, and therefore that by their service in the Navy they had paid for these. If, by their services, the appellants paid for the medical and hospital expenses, certainly the value of these are proper items for the jury to consider in arriving at the amount of damages to be paid by the appellee.

*Id.* at 562, 102 A.2d at 267. We ultimately held that a jury was entitled to consider, as an element of damages, the value of medical services furnished to the servicemen. It is significant that we noted that medical services supplied by the federal government to members of the armed forces could be considered part of a compensation package that servicemen receive in exchange for military service. We recognized that the medical services were not gratuitous, but rather paid for by the servicemen through their service to their country. Thus, the value of the medical services were a proper item for the jury to consider when assessing damages. In so holding, we recognized that even though the United States Navy technically covered the costs relating to the servicemen's emergency treatment, the costs were still incurred on their behalf. Similarly, although NYLCare paid the initial bill from Suburban Hospital, the costs were still incurred on petitioner's behalf.

ance.[18]   Home Mutual refused to pay Kopp based on the "ground that [Kopp] never incurred any expense for his hospitalization." *Id.* at 56, 94 N.W.2d at 225.   The court ultimately held:

> The defendant contends that, under the above-quoted policy provisions, it is a condition precedent to the insured's right of recovery upon the policy for his hospitalization that he shall first have incurred a debt for the same.   It is clear from the undisputed facts that no such debt was incurred by the plaintiff to pay for such hospitalization.   However, a debt was incurred on the part of Blue Cross to pay such expense to Luther Hospital, and the plaintiff had paid quarterly premiums to Blue Cross as consideration for Blue Cross undertaking so to do.   Thus expense was incurred for hospital services furnished '*to or for*' the plaintiff insured.
>
>   . . . .
>
>   ... However, where the injured person (in this case the insured) pays a consideration to have the expense of such medical or hospital services paid without liability to such injured person, it is our considered judgment that the injured person should be permitted to recover such expense under the policy clause in question.

*Id.* at 56–58, 94 N.W.2d at 225–26.

There are a number of cases which have followed the reasoning of *Kopp*.   In *Feit v. St. Paul Fire & Marine Insurance Company*, 27 Cal.Rptr. 870, 209 Cal.App.2d Supp. 825 (1962), a Kaiser Foundation Health Plan member injured in an automobile accident was treated by Permanente physicians at a Kaiser Foundation hospital.   As a pre-paying member of the Plan, the member was not required to, and did not,

---

**18.**  The medical payments clause in the insurance policy at issue in *Kopp, supra,* and several of the cases cited, *infra,* mirror the language of the clause included in State Farm's policy in the case at bar.   In *Kopp,* 6 Wis.2d at 56, 94 N.W.2d at 225, the policy read that the insurer agreed "[t]o pay all reasonable expenses incurred within one year from the date of accident for necessary medical, surgical, X-ray and dental services, including prosthetic devices, and necessary ambulance, hospital, professional nursing, and funeral services...."

further pay specifically for the services provided. Nevertheless, the member sought to recover the value of the Kaiser services from his motor vehicle insurer under the PIP clause of his policy, and submitted with his claim a statement from Kaiser indicating the amount he *would have paid* had he not been a paying member of the Plan. His claim was denied by the insurer. On appeal, however, the Superior Court of San Francisco County (Appellate Department), found that the language contained in the medical payments clause failed to specify *"who* is required to incur the expense in order for the insured to recover for medical or hospital services supplied" to an insured. *Id.* at 872, 209 Cal.App.2d Supp. at 828, quoting *Kopp,* 6 Wis.2d at 57, 94 N.W.2d at 225 (emphasis in original).

The *Feit* court continued by contrasting the "expenses incurred" language contained in the medical payments portion of the policy with the language contained in the liability portion of the policy, wherein the insurer agreed "to pay on behalf of the insured all sums which [the insured] shall become legally obligated to pay." *Id.* at 872, 209 Cal.App.2d Supp. at 828.[19] The court observed that if the insurer had intended to limit its exposure for medical payments "to such expenses as the insured should become legally liable to pay," the insurer would have employed the same language in the medical payment's portion as it employed in the liability portion. *Id.* The court deemed the insurer's deliberate use of different language in the medical payments portion of the policy to indicate that "the insurer intended to pay for medical expenses incurred, irrespective of by whom, and whether or not the insured was legally obligated to pay them." *Id; see State Farm v. Fuller,* 232 Ark. 329, 333, 336 S.W.2d 60, 63 (1960)

---

**19.** The liability coverage of State Farm's insurance policy in the case *sub judice* mirrors the liability portion of the policy at issue in *Feit,* and obligates State Farm under its liability coverage, as contrasted to its PIP coverage, to "pay damages which an *insured* becomes legally liable to pay." Given Maryland's strong policy that one of the purposes of PIP coverage is to provide prompt and speedy payment on a no-fault basis, whether "legally liable to pay" language as to PIP coverage would satisfy the requirements of the Maryland statute is doubtful. That issue, however, is not before us in the present case.

(Holding that where a U.S. veteran received benefits from a VA hospital, "[j]ust as the Blue Cross [in *Kopp* ] was held to have 'incurred' the hospital costs, we think here the federal government, in effect, 'incurred' the hospital costs of [Mrs. Fuller] in consideration for her services in the armed forces."); *Holmes v. California State Auto. Ass'n*, 185 Cal.Rptr. 521, 524, 135 Cal.App.3d 635, 639 (Cal.App. 1st Dist.1982) ("[Ms. Holmes] at the time of her admission to the hospital expressly undertook personal liability for the expenses about to be incurred. When a legal obligation to pay was created upon the rendition of services, the Medicare agreement became applicable and the hospital was bound by its commitment 'not to charge,' i.e., not to enforce against the patient liability for the costs incurred by the patient."); *Masaki v. Columbia Casualty Co.*, 48 Haw. 136, 143, 395 P.2d 927, 931 (Haw.1964) ("The [*Kopp* ] case clearly stands for the proposition that the insured is entitled to recover under a policy of the kind before us if medical expenses are incurred by someone, whether it be the insured or not. There is no reason ... to say that expenses were not incurred by someone on behalf of the plaintiff in this case."); *Curts v. Atlantic Mut. Ins. Co.*, 246 N.J.Super. 385, 392–93, 587 A.2d 1283, 1287 (1991) (holding that an automobile accident victim who received medical care as part of prepaid nursing home benefits was entitled to recover PIP benefits for the value of the services received); *Heis v. Allstate Ins. Co.*, 248 Or. 636, 436 P.2d 550 (1968) (relying on *Feit, supra, Kopp, supra,* and *Masaki, supra,* in holding that the spouse of a Kaiser plan member treated at a Kaiser facility was entitled to medical payment benefits from the automobile insurer).

■ While most of the cases rely on the construction of contracts rather than the construction of statutes, we agree with the rationale of our sister states. That rationale is no less relevant under the circumstances here present. In the case *sub judice*, section 19–505 and State Farm's PIP clause both fail to specify who is required to incur an expense before the insured is entitled to recover PIP benefits for medical or hospital services received as a result of an automobile acci-

dent. State Farm's argument that petitioner is not entitled to PIP benefits because he did not "incur" expenses simply does not pass muster. We agree with the rationale provided by *Shanafelt v. Allstate Insurance Company,* 217 Mich.App. 625, 638, 552 N.W.2d 671, 676 (1996), *cert. dismissed,* 564 N.W.2d 899 (1997), which astutely summarized:

> The primary definition of the word "incur" is "to become liable for." *Random House Webster's College Dictionary* (1995). Obviously, plaintiff became liable for her medical expenses when she accepted medical treatment. The fact that plaintiff had contracted with a health insurance company to compensate her for her medical expenses, or to pay directly the health care provider on her behalf, does not alter the fact that she was obligated to pay those expenses. Therefore, one may not reasonably maintain that plaintiff did not incur expenses.

Clearly, an expense was incurred on petitioner's behalf. We hold that in order to fall under the scope of section 19–505 and State Farm's policy, the expense need merely be incurred—regardless of whether it is the insured, the insured's health insurer, the insured's health maintenance organization, or any other collateral source of benefits, who ultimately pays the bill.[20] Thus, State Farm was both statutorily mandated by section 19–505 and contractually obligated under its policy to provide petitioner with PIP benefits. State Farm's argument to the contrary can be seen as an attempt to avoid payment of obligations, which it contractually agreed to pay. As *Feit,* 27 Cal.Rptr. at 872, 209 Cal.App.2d Supp. at 829, concluded:

> The existence of pre-paid medical, hospitalization and funeral plans is a matter of common knowledge and is certainly known to the insurance industry. If an insurer does not wish to honor claims of the type involved here it should exclude them specifically so that an insured with additional medical or hospital coverage would know that he

---

**20.** Other than Worker's Compensation Benefits.

is receiving less coverage for his premium dollar than some other insured who is without outside benefits. [21]

We interpret the language of section 19–505 and the State Farm policy to require only for expenses to be incurred—there is no language mandating that it must be the insured who pays the bills.[22] Thus, we hold that when petitioner was admitted to Suburban Hospital, received medical treatment and signed an agreement to pay expenses, an expense was incurred on his behalf upon which the granting of PIP benefits was both appropriate and mandatory.

## III. Conclusion

We hold that the Circuit Court erred in finding that the expenses arising out of the medical treatment petitioner received at Suburban Hospital, which was initially paid for by his HMO, were not an incurred expense by petitioner for which he was entitled to recover from his PIP coverage. Because the treatment and subsequent billing for his injuries arising out of the accident incurred within the three-year period, petitioner satisfied all of the requirements to be eligible for PIP coverage under sections 19–505, 19–507, and the express wording of the State Farm policy. In keeping with the language of the statutes and petitioner's policy with State Farm, under the facts of the case at bar: (1) an expense was incurred on petitioner's behalf at Suburban Hospital arising out of his automobile accident on March 27, 1997; (2) PIP benefits are to be paid by State Farm regardless of the fact

---

21. We recognize that, generally, in Maryland, State Farm could not exclude such claims without violating section 19–507, discussed, *supra.*

22. Because neither the statute nor the policy pinpoint who must "incur" the expense, we do not need to determine who actually "incurred" the expense in this case, because it makes no difference. It seems more appropriate that the expense need be incurred on the insured's behalf or as the *Kopp* court stated "to or for" the insured. We do note, however, that upon accepting treatment, and also upon signing the Consent to Treat form with the agreement to pay clause, that petitioner personally assumed responsibility for the medical expenses and thus, if such an evaluation was necessary, personally incurred the expense at that time.

that NYLCare, as a collateral source of medical benefits, initially paid in respect to these expenses; and (3) State Farm is mandated to provide petitioner with such PIP benefits.

**JUDGMENT OF THE CIRCUIT COURT FOR MONT-GOMERY COUNTY REVERSED AND CASE REMAND-ED TO THAT COURT FOR FURTHER PROCEEDINGS CONSISTENT WITH THIS OPINION; RESPONDENT TO PAY COSTS.**