Dear Colonel David B. Mitchell
In your capacities as Superintendent of the Maryland State Police and Chairman of the Maryland Handgun Roster Board, you have asked for our opinion concerning a State law that requires a handgun manufactured after December 31, 2002, to contain an "integrated mechanical safety device" as a prerequisite to sale or transfer in Maryland. In particular, you have asked for our opinion concerning the types of handgun safety mechanisms that meet that criterion. In addition, you ask whether the Handgun Roster Board is to determine whether a particular device satisfies the requirement.
The Maryland Regulated Firearms Law defines the phrase "integrated mechanical safety device" as a "disabling or locking device that . . . is built into a handgun and . . . is designed to prevent the handgun from being discharged unless the device has been deactivated." In our opinion, this term applies to technology that is built into a gun and that is designed to prevent the gun from being readily fired by a child or other unauthorized user. The provision was designed to enhance the safety of handguns and, accordingly, requires safety devices not already incorporated in most guns at the time that the provision was added to the law in 2000. The Handgun Roster Board is the appropriate administrative agency to assess whether particular handguns and safety technologies satisfy that requirement.[1]
 I Statutory Provisions
A. Childproof Gun Requirements
The Maryland Regulated Firearms Law requires that handguns sold in Maryland be equipped with mechanisms to prevent them from being easily fired by children or other unauthorized users. The law sets a timetable for the use of increasingly sophisticated safety equipment.
In particular, any handgun manufactured on or before December 31, 2002, may be sold by a firearms dealer only if it is accompanied by an "external safety lock." Annotated Code of Maryland, Article 27, § 442C(c). The statute defines "external safety lock" as:
an external device that is:
(i) Attached to a handgun with a key or combination lock; and
 (ii) Designed to prevent a handgun from being discharged unless the device has been deactivated.
Article 27, § 442C(a)(3).
For a gun manufactured after December 31, 2002, a different standard applies. Such a handgun must contain an "integrated mechanical safety device." Article 27, § 442C(d). The statute defines "integrated mechanical safety device" as:
a disabling or locking device that:
(i) Is built into a handgun; and
 (ii) Is designed to prevent the handgun from being discharged unless the device has been deactivated.
Article 27, § 442C(a)(6).
Finally, the law contemplates a possible future requirement that handguns incorporate "personalized handgun technology". "Personalized handgun" is defined as:
a handgun manufactured with incorporated design technology allowing it to be fired only by a person who is the authorized user of the handgun and that prevents any of the safety characteristics from being readily deactivated.
Article 27, § 442C(a)(7). The Handgun Roster Board is to study and report to the Governor and General Assembly concerning the status of personalized handgun technology. Article 27, § 442C(e). Currently, the statute does not require that guns sold in Maryland be equipped with personalized handgun technology by any particular date.
Thus, the Regulated Firearms Law initially requires that handguns be accompanied by an external safety device, sets a delayed effective date for the mandatory incorporation of "integrated" safety devices in new handguns, and finally looks forward to the eventual use of sophisticated "personalized" safety devices.[2]
B. Handgun Roster Board
As a general rule, a handgun may not be sold in Maryland unless it is listed on the State handgun roster. Article 27, § 36-I. In order to appear on that roster, a handgun must be approved by the Handgun Roster Board. Article 27, § 36J(b). Among the factors[3] that the Roster Board is to consider in assessing whether to add a particular handgun to the list is "reliability as to safety." Article 27, § 36J(b)(2)(vi). The Roster Board is to publish the list twice a year in the Maryland Register and distribute it to regulated firearms dealers in the State. Article 27, § 36J(b)(4).
The Handgun Roster Board consists of 11 members. Three of the members come from law enforcement backgrounds (the Secretary of the State Police, a representative of the Association of Chiefs of Police, and a representative of the Maryland State's Attorneys Association). Three members are to be from groups with a special interest in firearms (a dealer, gunsmith, or manufacturer's representative; a representative of the National Rifle Association; a representative of Marylanders Against Handgun Abuse).
Article 27, § 36J(a)(3)(i)-(vi). The rest of the Board members are citizen members. Two of the citizen members must be mechanical or electrical engineers. Article 27, § 36J(a)(3)(vii).
 II Analysis
Your questions pertain to the assessment whether a particular technology is properly classified as an "integrated mechanical safety device" under § 442C.
The cardinal rule in construing a statute is to ascertain and carry out the real intention of the Legislature. See, e.g., Dutta v. State Farm Ins. Co., 363 Md. 540, 549-50, 769 A.2d 948 (2001).
While legislative intent is generally derived from the words of the statute, "external manifestations" or "persuasive evidence," including amendments that occurred as a bill passed through the Legislature, the bill's relationship to earlier and subsequent legislation, and other material that fairly bears on the fundamental issue of legislative purpose or goals, may be considered. Id.
A. Legislative History
Section 442C, including the provisions concerning "integrated mechanical safety devices," was added to the Regulated Firearms Law by the Responsible Gun Safety Act of 2000, Chapter 2, Laws of Maryland 2000. That Act, which also amended the statute governing the Handgun Roster Board, was a result of an Administration bill that embodied recommendations of the Governor's Task Force on Childproof Guns ("Task Force").
1. Governor's Task Force on Childproof Guns
The Governor established the Task Force by Executive Order in 1999. COMAR 01.01.1999.18.
The Governor charged the Task Force with proposing legislation "to prevent the unintentional and criminal misuse of handguns by children and other unauthorized users." COMAR 01.01.1999.18D. In particular, the Task Force was to explore "design alterations and technological enhancements and necessary changes in law and regulation to support their implementation." Id.
On December 1, 1999, the Task Force issued its report containing twelve recommendations for legislation. The Task Force report and recommendations, as the source for the legislation that resulted in § 442C, provide important guidance for interpreting that law. See 2A Sutherland Statutory Construction § 48.11 ("The legislature is assumed to have adopted the legislation with the same intent evidenced by [a chief executive's] commission's report, unless the language of the statute unambiguously indicates the contrary").
The Task Force's primary recommendation was that the State ultimately require that each handgun sold in the State incorporate personalized handgun technology that would prevent the handgun from being fired by unauthorized persons. Task Force Report at p. 16. This requirement was intended to reduce death and disability resulting from unauthorized gun use, in the same manner that motor vehicle injuries have been reduced by mandatory preventive measures. Id. at p. 11.
However, the Task Force acknowledged that personalized handgun technology might not yet be commercially available. It therefore recommended that, in the interim, the State require that any new handgun sold in Maryland be equipped with an "integrated mechanical safety device to prevent children and other unauthorized users from firing the handgun." Task Force Report at p. 17. The Task Force explained:
Because personalized gun technology is not immediately available, the Task Force believes an interim standard requiring the sale of safer handguns is necessary. This interim standard requires an integrated-locking device, which prevents the firearm from being discharged without[4] The Act was introduced as Senate Bill 211 (2000). That bill was petitioned out of the Judicial Proceedings Committee by the full Senate without the benefit of a committee report. The bill passed the Senate with amendments, was subsequently approved by the House of Delegates without further changes, and was ultimately enacted as Chapter 2, Laws of Maryland 2000. In light of the atypical manner in which the bill reached the Senate floor, the Senate floor proceedings and testimony before the House Judiciary Committee concerning the amended bill are particularly valuable in evaluating legislative intent.
First activating or removing the locking device. It was observed that these integrated-locking devices make the handgun personalized in the sense that to activate the gun for use requires some action by the owner such as entering the right combination. Maryland would be the first state to require that trigger locks be built into the handgun.
Task Force Report at p. 17. This passage suggests that an "integrated mechanical safety device" is something that is built into the firearm, that prevents it from being fired, and that may be released only by someone with special knowledge of the device) e.g., an owner entering a combination to unlock it.
The Task Force recommendations were based in part on the research of its technology subcommittee, which surveyed childproof gun technologies and interviewed experts on firearms operation and safety. The subcommittee identified the following manual safety devices: grip safety, trigger locks, padlocks, safety on gun, Saf-T-Lok, magna trigger, and electromagnetic locks. It also identified the following electronic safety devices: palm print recognition, fingerprint recognition, touch memory, radio frequency ID, bar coding, remote control, and voice recognition. Task Force Report at pp. 12-14. The subcommittee expressed its view that the law should ultimately mandate a "child restraint," "user restricted gun." Id. at p. 13. Until this could be accomplished, the subcommittee recommended the interim requirement of a user-restricted gun with an integrated locking device consisting of a mechanical device, key, or safety lever combination. Id. at pp. 3-14. This is apparently the source of the Task Force recommendation.
These recommendations of the Task Force were embodied in Responsible Gun Safety Act of 2000, an Administration bill filed during the following session of the Legislature.
2. Responsible Gun Safety Act of 2000
As originally introduced, the bill would have required each handgun manufactured after December 31, 2001, to have an integrated mechanical safety device "or other incorporated design technology that is designed to prevent children and other unauthorized users from discharging the handgun." The bill would also have created a Commission on Personalized Handgun Technology to consider "whether personalized handguns are commercially available" and to produce a report on that subject. If that Commission found that the technology was commercially available, the bill provided a procedure for requiring that handguns sold in Maryland be equipped with that technology without need for further legislation.
When the bill was being debated on the Senate floor, the floor manager of the bill proposed significant amendments of the handgun safety provisions, which were ultimately adopted as part of the bill.
One of the amendments was apparently designed to address a concern that there was insufficient time for manufacturers to incorporate integrated mechanical safety devices in their handguns. See Amendment SB 0211/853922/1 (March 24, 2000). That amendment delayed the implementation of the "integrated mechanical safety device" requirement for one year — i.e., from January 1, 2002 to January 1, 2003 — and similarly revised the class of guns to which the requirement applied — those manufactured after December 31, 2002 rather than after December 31, 2001.
In addition, the amendment dropped the option for a manufacturer to use some "other incorporated design technology" as an alternative to the requirement of an integrated mechanical safety device. Instead, during the interim period created by the extension, a dealer could transfer a gun only if it was accompanied by an "external safety lock"; a definition of that term, also added by the amendment, made clear that an external safety lock was a safety mechanism that was not necessarily incorporated in the handgun itself.
The definition of "integrated mechanical safety device" remained essentially unchanged in the amended version of the bill.[5]
In explaining the amendment during the Senate debate, the floor manager stated that the integrated mechanical safety device and external safety lock requirements were essentially identical to provisions in a highly publicized settlement agreement between the federal government and Smith 
Wesson, a major gun manufacturer, that had been announced a week before the floor debate.[6] Remarks of Senator Chris Van Hollen, Jr., Tape of Senate Floor Debate on Senate Bill 211 (March 23-24, 2000). The federal settlement provided that, within 24 months after execution of the agreement, each firearm manufactured by Smith Wesson would include a "built-in, on-board locking system, by which the firearm can only be operated with a key or combination or other mechanism unique to that gun." In the interim, each Smith Wesson firearm would be supplied with an "external locking device" that effectively prevents the operation of the firearm when locked. Smith Wesson Settlement at I.A.1.b.-c (March 17, 2000).
The change in timetable effected by the Senate amendment of the bill also was consistent with the timeline in the Smith Wesson agreement. In testimony submitted to the House Judiciary Committee concerning the amended Senate bill, Administration officials explained the relationship of the Smith Wesson settlement to the amendment of the bill's timetable as follows:
As introduced, Senate Bill 211 required that by January 1, 2002, any new handguns sold in Maryland had to be equipped with an integrated mechanical safety device. This deadline recognized that while some technology is available to build locks into handguns to prevent children and other unauthorized users from firing the handgun, some time would be required to perfect the technology. On March 17, 2000, Smith Wesson announced that it would place internal locks in all of its handguns within 24 months (March 2002). In recognition of this time line, the Governor and the Senate agreed to delay the deadline for the internal lock by one year, to January 1, 2003.
Joint Statement submitted by Governor's Chief Legislative Officer, Secretary of Public Safety Correctional Services, Governor's Legal Counsel, and Secretary of State Police (March 31, 2000).[7]
The amendment also eliminated the proposed Commission on Personalized Handgun Technology and gave the charge to study that technology to the existing Handgun Roster Board, which was required to make periodic reports on the status of personalized gun technology. At the same time, the proposed mechanism for State law to require the incorporation of personalized gun technology without additional legislation was eliminated from the bill. Thus, the amendment contemplated that the General Assembly would again review the subject of childproof guns before "personalized handgun technology" became a prerequisite to a handgun transaction.
A second amendment, offered jointly by the Senate floor manager and one of the chief Senate opponents of the bill, increased the membership of the Handgun Roster Board from nine to eleven by adding two citizen members with the direction that they be "mechanical or electrical engineers." See Article 27, § 36J(a)(3)(vii). The sponsors of the amendment explained that the requirement of engineering expertise for certain members of the Roster Board was related to the new handgun safety provisions, including the requirement of an integrated mechanical safety device. See Amendment SB 0211/593129/1 (March 24, 2000); remarks of Senators Timothy R. Ferguson and Chris Van Hollen, Jr., Tape of Senate Floor Debate on Senate Bill 211 (March 24, 2000). Testimony submitted by Administration officials to the House Judiciary Committee similarly explained the purpose of this amendment:
Because of the technology issues that the [Handgun Roster] Board will consider when approving for sale guns with integrated locks on January 1, 2003, and because the Board is charged with studying and that letter argued that a typical "gun safety" would qualify as an integrated mechanical safety device under the definition in the bill that eventually became § 442C(a)(6) and suggested that the definition would have to be amended to specify the locking mechanism in order to exclude a gun safety. The delegate making this argument was not among the legislative representatives on the Task Force that proposed the bill containing the definition; nor was he one of the 30 sponsors of the cross-filed House bill that contained the same definition. Expressions of legislative intent by a single legislator who was neither a sponsor of the bill or of the amendments adopted are generally accorded little weight by the courts. See 2A Sutherland Statutory Construction §§ 48.13, 48.16. Moreover, although numerous amendments to the bill were proposed on the House floor, the amendment recommended in the letter was never proposed or voted upon.
Reporting on personalized gun technology, the two additional members must be electrical or mechanical engineers to provide help addressing the technology issues.
Id. Thus, the bill was designed to enhance the expertise of the Handgun Roster Board to deal with issues concerning integrated mechanical safety devices and personalized gun technology.
B. Integrated Mechanical Safety Device
By definition, an "integrated mechanical safety device" is a device that is built into a handgun and that mechanically disables the gun so that it cannot be discharged until the device is deactivated. It is evident from the text of the statute, its amendment to conform to the Smith Wesson settlement, and the remarks of the floor manager relating the bill to the terms of that agreement, that the term "integrated mechanical safety device" in § 442C is to be interpreted consistently with the term "internal locking device" in the Smith Wesson settlement agreement. The addition of the interim requirement of an "external safety lock" and the extended timetable for implementation of the requirement that each handgun incorporate an integrated mechanical safety device make it clear that the latter requirement was meant to encompass safety devices not commonly part of guns sold prior to 2000. On the other hand, the Legislature stopped short of requiring that handguns be equipped with sophisticated personalized technology such as a fingerprint or voice recognition device that necessarily renders operation of the safety mechanism unique to the owner.
Of course, the fact that a particular technology existed or even was in use prior to 2000 does not mean that it cannot qualify as an integrated mechanical safety device. However, it is clear that the statute was intended to enhance the safety and childproof quality of firearms sold in Maryland. There would have been little reason to delay implementation of the requirement for an "integrated" safety device and temporarily require the provision of "external" safety locks if an integrated device that satisfied the definition was already a standard feature of handguns. A construction of the statute that permitted a handgun to satisfy that standard simply by incorporating a common device that was in widespread use on handguns before 2000 would defeat the evident purpose of the statute.[8]
The only amendment proposed on the House floor that would have affected the definition of "integrated mechanical safety device" was proposed by one of the opponents of the bill and would have added a subparagraph stating that the term did not include "a lateral safety lever, grip safety device, or other safety device in existence and commonly used as of January 1, 2000." Amendment SB0211/623726/2 (March 31, 2000). To the extent that this amendment expressed a view that the definition otherwise encompassed such devices, it is not necessarily persuasive. See Hetzel, Instilling Legislative Interpretation Skills in the Classroom and the Courtroom, 48 U. Pitt. L.Rev. 663, 685 (1987) (while views of sponsor instructive on legislative intent, those of opponent are not). Moreover, other considerations likely influenced some legislators who voted down all of the amendments proposed in the House, namely, concern that returning an amended bill to the Senate risked the possibility of a filibuster by its opponents that would have threatened its passage.
C. Assessment of Safety Devices
You have also asked how it may be determined whether a particular handgun complies with § 442C. As explained in Part B above, a gun that has no more than an ordinary gun safety of the kind in widespread use for years is insufficient as a matter of law. Beyond that determination, whether a particular safety device is an "integrated mechanical safety device" within the terms of that statute is a mixed question of law and fact. This Office has neither the expertise nor the authority to make the relevant factual determination involved in whether a specific safety device satisfies this standard.
The statute does not explicitly entrust that determination to a particular agency. In our view, the Handgun Roster Board is the State agency with the appropriate expertise and best positioned to determine whether a particular safety device is an "integrated mechanical safety device" for purposes of the statute.
The General Assembly has designated the Handgun Roster Board as the agency to assess the safety of a handgun as a prerequisite to its sale in Maryland. See Article 27, § 36J(b). When it introduced the requirement of an "integrated mechanical safety device" in the Responsible Gun Safety Act of 2000, the Legislature also increased the membership of the Roster Board and required that two of the members be mechanical or electrical engineers in order to provide the Roster Board with additional expertise to deal with issues generated by the gun safety requirements created in § 442C. Thus, it is apparent that the Legislature contemplated that the Roster Board would apply its collective expertise to the determination whether the technology incorporated in a particular handgun constitutes an "integrated mechanical safety device."
Finally, the Legislature has authorized the Secretary of the State Police to adopt regulations to carry out the provisions of the Regulated Firearms Law. Article 27, § 448. Under that authority, with the advice of the Handgun Roster Board, the Secretary could appropriately adopt regulations to designate those mechanical safety devices that, when incorporated into a handgun, satisfy the statutory requirement.
 III Conclusion
In our opinion, the term "integrated mechanical safety device" applies to technology built into a gun that is designed to prevent the particular gun from being readily fired by a child or other unauthorized user. The requirement that handguns sold in Maryland include these devices was designed to enhance the safety of handguns and, accordingly, encompasses safety devices not already incorporated in most guns at the time that the provision was enacted by the Responsible Gun Safety Act of 2000. The Handgun Roster Board is the appropriate administrative agency to assess whether particular handguns and safety technologies satisfy that requirement.
J. Joseph Curran, Jr.
Attorney General
Robert N. McDonald Chief Counsel Opinions Advice
[1] Our opinion is consistent with advice that Assistant Attorney General Robert A. Zarnoch provided to the General Assembly on these questions when the pertinent provisions of the Regulated Firearms Law were passed. See Letter to Honorable Chris Van Hollen, Jr. (March 28, 2000); Letter to Honorable George W. Owings, III (March 29, 2000); Letter to Honorable Timothy R. Ferguson (March 30, 2000); Letter to Honorable Andrew P. Harris (March 31, 2000).
[2] The statute excepts certain transactions from its purview. It does not apply to transactions involving the military, law enforcement agencies, federal agencies, and organizations required by federal law to maintain handguns. Nor does it apply to antique firearms, firearms that have been rendered permanently inoperative, or firearms sold to out-of-state customers. Article 27, § 442C(b).
[3] The Board is also to consider eight other factors: concealability, ballistic accuracy, weight, quality of materials, quality of manufacture, caliber, detectability by standard security equipment, and utility for sporting activities, self-protection, or law enforcement. Article 27, § 36J(b)(2). The statute directs the Board to "carefully consider" each of these characteristics and "not place undue weight on any one characteristic." Article 27, § 36J(b)(3).
[4] The bill was also cross-filed as House Bill 279. While the House Judiciary Committee conducted a hearing on House Bill 279, it did not report the bill out of committee and elected instead to proceed with the companion bill as amended by the Senate.
[5] As originally drafted, the bill defined "integrated mechanical safety device" in part as a device "designed to prevent the handgun from being discharged unless the device has been removed or deactivated." (emphasis added). The amendment eliminated the verb "remove", a term apparently redundant of the concept of "deactivate" and possibly at odds with the notion of an "integrated" device.
[6] Statements of legislator acting as floor manager, co-sponsor of the bill, and sole sponsor of key amendments, while not conclusive on legislative intent, are generally accorded some weight by the courts in determining the meaning of a statute. See State v. Runge, 317 Md. 613,619, 566 A.2d 88 (1989) (relying on statement of bill's sponsor); 2A Sutherland Statutory Construction § 48.15 ; Schwartz Conn, The Court of Appeals at the Cocktail Party: The Use and Misuse of Legislative History, 54 Md. L.Rev. 432, 445-46 n. 56 (1995).
[7] Notably, three of the four Administration officials who provided the testimony were members or staff of the Task Force on Childproof Guns.
[8] One delegate expressed a contrary view in a letter addressed to the Chairman of the House Judiciary Committee after the amended bill had passed the Senate and while it was being considered in the House. See Letter of Honorable Dana Lee Dembrow to Honorable Joseph Vallario (March 30, 2000).
 *Page 119