741 A.2d 1114

## MARYLAND AUTOMOBILE INSURANCE FUND

v.

### Ralph PERRY.

No. 43, Sept. Term, 1999.

Court of Appeals of Maryland.

Dec. 8, 1999.

Eugene B. Connor, Jr. (John P. Stabile and Associates, on brief), Baltimore, for Petitioner.

Ryan M. Saiontz (Robert J. Zarbin, Saiontz, Kirk & Miles, P.A., on brief), Baltimore, for Respondent.

Argued before BELL, C.J., and ELDRIDGE, RODOWSKY, RAKER, WILNER, CATHELL, and HARRELL, JJ.

WILNER, Judge.

In January, 1994, respondent, Ralph Perry, owned two cars—a 1991 Chevrolet that was insured by the Maryland Automobile Insurance Fund (MAIF) and a 1990 Chevrolet that was uninsured. On January 24, while driving the insured vehicle, he was in an accident and, as a result, incurred medical expenses and wage losses aggregating $1,373. His MAIF insurance policy contained Personal Injury Protection (PIP) coverage that provided for the payment of up to $2,500 for such medical expenses and wage losses. Notwithstanding that coverage, MAIF refused to pay the benefits, contending that (1) Perry's ownership of an uninsured vehicle caused him to be in violation of Maryland Code, § 17–103 of the Transportation Article, and (2) as a result of that violation, payment of the PIP benefits was precluded by Maryland Code, Article 48A, § 543(b)(2), which appears now as § 19–513(c)(2) of the Insurance Article.[1]

Aggrieved at that response, Perry sued MAIF in the district court and lost. On appeal, however, the Circuit Court for Baltimore City reversed and entered judgment for Perry. We granted MAIF's petition for *certiorari* to consider whether Perry's ownership of an uninsured vehicle bars him from recovering PIP benefits under the MAIF policy. We shall affirm the judgment of the circuit court.

---

1. Effective October 1, 1997, the insurance laws formerly contained in Article 48A of the Code were recodified in the new Insurance Article. For convenience, we shall use the current code references, except when the context requires otherwise.

Maryland law requires that the owners of motor vehicles required to be registered have certain minimum insurance coverage (or comparable security acceptable to the Motor Vehicle Administration). It requires insurance companies writing motor vehicle insurance in Maryland to offer that minimum coverage as well as certain other coverages that an insured may opt to decline or limit. The requirements imposed upon vehicle owners to have the mandated security are provided for in title 17 of the Transportation Article. The requirements imposed upon insurance companies to offer the specified coverages are found in title 19, subtitle 5 of the Insurance Article. In a nutshell, the Transportation Article focuses on the owners and drivers of motor vehicles; the Insurance Article focuses on insurance companies and their insureds. The two parts of the Code obviously need to be read together, in harmony.

Section 17–104 of the Transportation Article requires the owners of motor vehicles subject to registration in Maryland to maintain certain required security during the registration period and prohibits the Motor Vehicle Administration from issuing or transferring the registration of a motor vehicle unless the owner or prospective owner furnishes satisfactory evidence that the required security is in effect.[2] The nature and extent of the required security is set forth in § 17–103. With exceptions not relevant here, that section requires the security to be in the form of an insurance policy providing (1) liability coverage for bodily injury or death arising from an accident of up to $20,000 for one person and up to $40,000 for two or more persons; (2) liability coverage for damage to the property of others of up to $10,000; (3) unless waived, the benefits described under § 19–505 of the Insurance Article as to basic primary coverage (PIP coverage); and (4) the benefits

---

2. With enumerated exceptions not apparently relevant here, § 13–402 of the Transportation Article requires every motor vehicle driven on a Maryland highway to be registered. Section 13–401 prohibits persons from driving an unregistered vehicle on Maryland highways and further prohibits the owner of an unregistered vehicle from allowing such a vehicle to be driven on those highways.

required under § 19–509 of the Insurance Article as to required additional coverage (uninsured/underinsured motorist coverage). A person who fails to maintain the required security is subject to a variety of civil penalties, including suspension of the person's driving privileges and monetary fines. *See* § 17–106. A person who knowingly drives an uninsured motor vehicle or an owner who knowingly permits one to be driven is subject as well to criminal penalties. *See* §§ 17–107, 27–101(h). For a first offense, the person is subject to a $1,000 fine and a year in jail.

Title 19, subtitle 5 of the Insurance Article, as noted, sets forth the kinds of primary coverages that motor vehicle insurers are required to offer in Maryland policies. There are three such coverages: PIP benefits, provided for in §§ 19–505 through 19–508; uninsured/underinsured motorist coverage, provided for in §§ 19–509 through 19–511; and collision coverage, provided for in § 19–512. We are concerned here with the PIP coverage. Section 19–505 requires that, unless waived by the insured in accordance with § 19–506, each insurer who sells motor vehicle insurance in Maryland must provide PIP coverage of at least $2,500 for (1) the first named insured under the policy and any family member of that insured who resides in the insured's household, who is injured in *any* motor vehicle accident, including an accident that involves an uninsured motor vehicle; (2) any other individual who is injured in a motor vehicle accident while using the insured vehicle with the permission of the named insured; (3) an individual injured in a motor vehicle accident while occupying the insured vehicle as a guest or passenger; and (4) an individual injured in a motor vehicle accident that involves the insured vehicle, either as a pedestrian or while in, on, or alighting from a vehicle operated by animal or muscular power.

Section 19–505(c)(1)(i) allows insurers to exclude from PIP coverage certain individuals who otherwise would be required to be covered. They include an individual who (1) intentionally causes the accident resulting in the injury; (2) is a nonresident injured as a pedestrian in an accident that occurs

outside Maryland; (3) is injured while operating or voluntarily riding in a vehicle the person knows is stolen; or (4) is injured in a motor vehicle accident while committing a felony or fleeing or eluding the police. Section 19–505(c)(1)(ii) provides further that PIP coverage will not extend to:

> "the named insured or a family member of the named insured who resides in the named insured's household for an injury that occurs while the named insured or family member *is occupying* an uninsured motor vehicle owned by … the named insured; or … an immediate family member of the named insured who resides in the named insured's household."

(Emphasis added).

It is evident, if we just consider these provisions, that Perry would be entitled to PIP benefits. He was the named insured under a policy that, absent a waiver, was required to contain, and did contain, PIP coverage, and he fell within none of the permissible exclusions. Although he owned an uninsured motor vehicle, he was not occupying it when the injury occurred.

█ MAIF's defense arises from § 19–513, which sets forth certain limitations on the recovery of benefits provided for in the subtitle. Subsection (c) provides:

> "(1) The insurer of a motor vehicle for which the coverage described in § 19–505 of this subtitle is in effect shall pay the benefits described in § 19–505 of this subtitle to an individual who is injured in a motor vehicle accident:
>
> (i) while occupying the insured motor vehicle; or
>
> (ii) by the insured motor vehicle as a pedestrian, while in, on, or alighting from a vehicle powered by animal or muscular power, or while on or alighting from an animal.
>
> (2) *An insurer may not pay benefits under paragraph (1) of this subsection to an individual who is in violation of § 17–103 of the Transportation Article.*"

(Emphasis added).

MAIF's argument is that Perry's ownership of an uninsured motor vehicle—the 1990 Chevrolet—constituted a violation of

§ 17–103 and that, because he was in violation of that section when the injury occurred, MAIF was forbidden to pay him the PIP benefits to which he otherwise would have been entitled. Citing *Van Horn v. Atlantic Mutual,* 334 Md. 669, 641 A.2d 195 (1994) and *Pennsylvania Nat'l Mut. v. Gartelman,* 288 Md. 151, 416 A.2d 734 (1980), MAIF stresses the strong legislative policy designed to assure that people who own or operate motor vehicles in Maryland are financially responsible and urges that the provision in § 19–513(c)(2), which it regards as precluding the payment of PIP benefits to one who owns an uninsured vehicle, is in furtherance of that policy and should be enforced. It relies as well on three intermediate appellate court decisions from Pennsylvania construing what MAIF regards as a comparable statute to require the denial of PIP benefits to one who owns an uninsured vehicle. *See Kresge v. Keystone Ins. Co.,* 389 Pa.Super. 548, 567 A.2d 739 (1989); *Mowery v. Prudential Prop. & Cas. Ins.,* 369 Pa.Super. 494, 535 A.2d 658 (1988); *Allen v. Erie Ins. Co.,* 369 Pa.Super. 6, 534 A.2d 839 (1987). We believe that the Pennsylvania statute is not comparable to § 19–513(c)(2) and that the Maryland provision was not intended to create the result MAIF seeks.

The Pennsylvania statute, 75 Pa.C.S.A. § 1714, is part of that State's Motor Vehicle Financial Responsibility Law. It provides, in relevant part, that "[a]n owner of a currently registered motor vehicle who does not have financial responsibility ... cannot recover first party benefits." In the cases cited by MAIF, the Pennsylvania court sustained the constitutionality of that statute and enforced it in accordance with the legislative intent behind it. As noted by the *Allen* court:

"In passing the Act [meaning the entire Motor Vehicle Financial Responsibility Law], the Legislature was primarily concerned with the rising consumer cost of automobile insurance, created in part by the substantial number of uninsured motorists who contributed nothing to the pool of insurance funds from which claims were paid.... The Act has the effect of requiring all owners of registered vehicles to share in the burden of insurance before they can obtain

the benefits. By denying benefits to a certain class of people—those not insuring their registered vehicles—the Act encourages the purchase of insurance by all owners who register vehicles which can be legally operated on the highways."

*Allen,* 534 A.2d at 840–41.

We have no quarrel with the three Pennsylvania decisions. It seems evident that § 1714 was designed and intended by the Pennsylvania legislature to do what the court said. It is equally evident, however, that the Maryland provision, § 19–513(c)(2), had a very different purpose and was *not* intended to disqualify a person from recovering PIP benefits to which the person is otherwise entitled, merely because that person owns an uninsured motor vehicle that was not involved in the accident.

Most of what is now contained in title 19, subtitle 5 of the Insurance Article and the basic required security provisions of title 17, subtitle 1 of the Transportation Article were enacted in 1972, by 1972 Md. Laws, ch. 73. That was a comprehensive law that, among other things, inaugurated compulsory insurance or other required security, established MAIF as an insurer of last resort, prohibited the arbitrary cancellation and non-renewal of motor vehicle insurance policies, and required policies to contain collision and PIP coverage. Under that law, and until 1989, PIP coverage up to $2,500 was mandatory; unless equivalent benefits were provided through another policy approved by the Insurance Commissioner, it had to be included in every motor vehicle insurance policy and could not be declined or waived by the insured. *See* former Maryland Code (1957; 1986 Repl.Vol.), Article 48A, § 539; Transportation Article (1987 Repl.Vol. and 1988 Supp.), § 17–103(b)(3). Former § 545 of Article 48A, as enacted in 1972 and until amended in 1989, listed the only exclusions allowed from the mandated PIP coverage, which were those now specified in § 19–505(c)(1)(i)—individuals who intentionally cause the accident, are injured while voluntarily riding in a vehicle known to be stolen, are injured while in the commission of a felony or while eluding the police, or are non-resident pedestrians in-

jured in an accident occurring outside Maryland. Section 17–103(b)(3) of the Transportation Article, which now requires PIP coverage "unless waived," did not then contain that condition; the requirement was absolute.

The exclusion relied upon by MAIF was not in the 1972 enactment and was thus never part of the comprehensive required financial responsibility scheme enacted by the General Assembly, as apparently is the case in Pennsylvania. When deciding both to require minimum financial responsibility in the form of insurance and to mandate certain primary, or first party, coverages as part of that insurance, the Legislature did not opt to deny PIP benefits to persons otherwise entitled to them simply because they owned an uninsured vehicle. The thrust of the 1972 law was to extend, not restrict, insurance protection, especially a limited amount of primary, no-fault benefits for wage loss and basic medical expenses. The Maryland response to the problem of uninsured motorists was the creation of MAIF, to provide insurance for those persons who could not obtain it in the private market, the preclusion of arbitrary cancellations and non-renewals of policies by private insurers, and the civil and criminal penalties attached to owning or driving an uninsured vehicle.

What is now § 19–513(c)(2) was enacted as part of a 1989 law that, for the first time, allowed insureds to decline PIP coverage. The requirement of that coverage was a major innovation in 1972; it represented the State's limited endorsement of the concept of no-fault automobile insurance, then being widely touted as the answer to perceived flaws in our system of compensating those injured in motor vehicle accidents. The premiums for that coverage, initially, were minimal, as low as $3. Over the years, however, claims experience caused PIP premiums to increase not only substantially but unevenly throughout the State. Evidence presented to the General Assembly in 1989 showed a wide variation in PIP premiums even for the best drivers, ranging, for one major insurance company, from $33 for a resident of Allegany County to $194 for residents of certain areas of Baltimore City.

MAIF rates for PIP coverage varied among its 14 geographic territories from $166 to $482.

Efforts were made as early as 1987 to alter or repeal the PIP requirement, and those efforts bore fruit in 1989. *See* 1989 Md. Laws, ch. 555. The 1989 Act effected the change by (1) amending § 17–103(b)(3) to add the condition, "unless waived," to the requirement of PIP coverage; (2) rewriting then- § 539 of Article 48A—current § 19–505—to add the same condition and make conforming changes; (3) adding what is now § 19–506, setting forth a detailed procedure for the waiver of PIP benefits by an insured; (4) adding to then- § 543(b) what is now § 19–513(c)(2)—the provision relied upon by MAIF; and (5) making conforming changes to other sections.

The purpose and meaning of § 19–513(c)(2) is well-explained in the public legislative history of the 1989 law. A person injured in an automobile accident could be eligible for PIP benefits from two or more sources—the insurer of the vehicle involved in the accident and, if the person had his or her own insurance on another vehicle, from the insurer of that vehicle as well. *See* § 19–505(a)(1)(i). The law always precluded collecting from *both* insurers (§ 19–513(b)) and required, where coverage was available from both sources, that the benefits be paid by the insurer of the vehicle involved in the accident. *See* § 19–513(c)(1). In allowing insureds to waive PIP benefits under their own policies, however, the Legislature determined that a waiver of PIP benefits was a *total* waiver, and that, if an insured waived such benefits under his/her own policy, the insured could not collect those benefits from any other insurer. That purpose is stated expressly in the Floor Report of the House Economic Matters Committee:

"A waiver of the coverage would constitute a waiver of all PIP benefits provided under the first named insured's policy and any other motor vehicle liability policy issued in Maryland. In other words, once PIP is waived, the persons to whom the waiver applies cannot go against the PIP coverage of another driver who has not waived merely because the first person waived under their own policy."

The Floor Report goes on to explain that the waiver of PIP coverage "is for the no-fault remedy itself" and not merely the waiver under a specific policy:

"In other words, a person who has waived the add-on no-fault benefit for himself and his family under his own policy should not be able to recover PIP benefits merely because he happens to be a passenger in an automobile for which PIP coverage has not been waived."

■ That explanation puts the purpose of the new language now appearing as § 19–513(c)(2) in clear focus. It was not to disqualify a person from PIP benefits merely because the person owns an uninsured vehicle that was not involved in the accident, as MAIF contends, but to disqualify only those persons who had deliberately waived PIP coverage under their own policy, in accordance with § 19–506. Perry, of course, is not subject to that disqualification; he is seeking to collect PIP benefits from his own insurer and did not waive his right to do so.

JUDGMENT OF CIRCUIT COURT FOR BALTIMORE CITY AFFIRMED; PETITIONER TO PAY THE COSTS.