841 A.2d 858

**Michael Joseph SALAMON**

v.

**PROGRESSIVE CLASSIC INSURANCE COMPANY.**

**No. 46, Sept. Term, 2003.**

Court of Appeals of Maryland.

Feb. 10, 2004.

302

Robert J. Lynott (Thomas & Libowitz, P.A. of Baltimore), on brief for appellant.

Angus R. Everton (Morgan Shelsby Carlo Downs & Everton P.A., of Hunt Valley), on brief, for appellant.

Argued before BELL, C.J., RAKER, WILNER, CATHELL, HARRELL, BATTAGLIA and ELDRIDGE (retired, specially assigned), JJ.

HARRELL, Judge.

This Court, on a number of occasions, has held that, under Maryland's compulsory automobile insurance statute, contractual exclusions in automobile insurance policies that excuse or reduce benefits below the minimum statutorily required levels or types of coverage, and are not expressly authorized by the General Assembly, are invalid. Relevant to the present declaratory judgment action, the insured, a student employed as a part-time pizza delivery driver, was involved in a two car motor vehicle accident while on the job. His insurer, relying on a so-called "pizza exclusion" in the insurance policy contract, declined to indemnify or defend its insured regarding claims brought by the other driver. The "pizza exclusion," which purports to allow the insurer to deny coverage if an

insured driver was delivering "property for compensation" at the time of the accident, is not authorized expressly under the statute. Thus, we shall hold that the exclusion is invalid.

## I.

On 9 April 2001, Michael Salamon was delivering pizzas for The Pizza Connection, an enterprise operated by GLW Enterprises ("GLW"). On that day, his vehicle collided with a vehicle owned and operated by Carol Dennis. Salamon, the owner of the vehicle he was operating, maintained no commercial vehicle insurance, but instead had a personal automobile policy issued by Progressive Classic Insurance Company ("Progressive").[1] Salamon secured his insurance five months before the accident, before he began employment with The Pizza Connection. There is no indication in the record whether Salamon had contemplated seeking such employment either at the time he applied for the policy or when it was issued by Progressive. The policy contained a series of exclusions, including one referred to here as the "pizza exclusion:"[2]

"Coverage under this Part I [Liability to Others], including [Progressive's] duty to defend, does not apply to:

1. The insurance contract in question provided for only the minimum statutory limits of bodily injury/property damage coverage—$20,000/ $40,000. Thus, this case does not present the additional question of whether, if the relevant exclusion is invalid, the insurer's potential liability is the full amount of the purchased coverage limits or merely the statutory minimum requirements for coverage. *See West Am. Ins. Co. v. Popa*, 352 Md. 455, 723 A.2d 1 (1998); *Van Horn v. Atlantic Mut. Ins. Co.*, 334 Md. 669, 641 A.2d 195 (1994); *Larimore v. American Ins. Co.*, 314 Md. 617, 552 A.2d 889 (1989), *State Farm Mut. v. Nationwide Mut.*, 307 Md. 631, 516 A.2d 586 (1986).

2. "Pizza exclusions," although having a common objective, do not appear in the insurance industry to have a standard phrasing. [I]t follows that they must be interpreted pursuant to their terms on a contract by contract or case by case basis, and not by sweeping language saying that regardless of the exact provisions of the contract we shall interpret all similar, but not identical, contracts alike. *Nat'l Grange Mut. Ins. v. Pinkney*, 284 Md. 694, 706, 399 A.2d 877, 883 (1979) (interpreting an omnibus clause in an insurance contract).

"1. bodily injury or property damage arising out of the ownership, maintenance, or use of a vehicle while being used to carry persons or property for compensation or a fee, including, but not limited to, delivery of magazines, newspapers, food, or any other products. This exclusion does not apply to shared-expense car pools . . .

\* \* \*

"Coverage under this Part IV [Damage to a Vehicle] does not apply for loss:

1. to a covered vehicle, non-owned vehicle, or trailer, while being used to carry persons or property for compensation or a fee, including, but not limited to, delivery of magazines, newspapers, food, or any other products. This exclusion does not apply to shared-expense car pools . . ."

After Salamon informed his insurer of the occurrence and circumstances of the accident, Progressive filed a complaint in the Circuit Court for Baltimore County seeking a declaratory judgment that, based on the "pizza exclusion," it was not liable under the policy to Salamon, Dennis, or the Government Employees Insurance Company (GEICO) (Dennis's insurer).[3] In a separate, subsequent action, Dennis filed suit in the same court against Salamon, GLW, and Progressive for her injuries and property damage stemming from the accident. The Circuit Court granted a stay in Dennis's suit pending final resolution of this declaratory judgment action brought by Progressive.

Progressive filed a motion for summary judgment in its declaratory judgment action. Salamon opposed Progressive's motion and filed a counter-motion for summary judgment. In

---

**3.** In its complaint, Progressive, in relevant part, sought a declaration that: (a) it "is not obligated under Policy Number 10892396–0 to provide coverage, nor is [it] under a duty to defend, in the event that any suit or action is filed arising out of the accident of April 9, 2001," and (b) "[it] is under no duty to pay any amount under the 'collision' coverage contained in Part IV of [its] Policy Number 10892396–0."

memoranda and in oral argument at an 11 December 2002 hearing on the cross-motions, Progressive contended that the pizza exclusion in the policy unambiguously excused it from both coverage and the duty to defend. Salamon countered that the exclusion was void because it was inconsistent with Maryland's compulsory insurance statute. The trial court granted Progressive's motion for summary judgment.[4,5]

Salamon appealed, presenting only the question of whether Progressive's exclusion "contravenes Maryland public policy . . . and, as a result, is invalid and unenforceable." Before the Court of Special Appeals could decide the appeal, this Court granted certiorari on its own initiative. *Salamon v. Progressive,* 376 Md. 139, 829 A.2d 530 (2003).

## II.

Maryland Rule 2–501(e), governing summary judgment, states, in relevant part:

"Entry of Judgment. The court shall enter judgment in favor of or against the moving party if the motion and response show that there is no genuine dispute as to any material fact and that the party in whose favor judgment is entered is entitled to judgment as a matter of law."

The facts relevant to the declaratory judgment action—that Salamon, Progressive's insured, was delivering pizzas, in violation of the "pizza exclusion" in the policy, when his car collided

---

**4.** During the pendency of the Circuit Court action, GEICO filed a Third–Party Complaint seeking to add GLW as a defendant to the declaratory action brought by Progressive. GEICO later submitted a Stipulation of Dismissal, rendering those issues moot.

**5.** The trial court judge also ruled that a discovery motion, filed by Salamon prior to the filing of Progressive's motion for summary judgment, was rendered moot by his decision to grant Progressive's motion for summary judgment. Salamon asks that this Court, as an alternative to ordering the grant of his counter-motion for summary judgment, remand the case to the Circuit Court with instructions to rule on the discovery motion. Because we conclude that the trial court should have granted Salamon's counter-motion for summary judgment, the discovery motion remains moot. The same applies to other motions pending at the time of the summary judgment hearing.

with Dennis's vehicle—are not in dispute.[6] "When reviewing a grant of summary judgment, we must make the threshold determination as to whether a genuine dispute of material fact exists, and only where such dispute is absent will we proceed to review determinations of law." *Remsburg v. Montgomery,* 376 Md. 568, 579, 831 A.2d 18, 24 (2003). "An appellate court reviews a trial court's grant of a motion for summary judgment *de novo.* The trial court will not determine any disputed facts, but rather makes a ruling as a matter of law. The standard of appellate review, therefore, is whether the trial court was legally correct." *Id.* (citations omitted). The only issue presented in this case is a question of law involving statutory interpretation, which we review *de novo.*

## III.

During the 11 December 2002 hearing, the trial judge explained his reasoning for granting Progressive's motion for summary judgment.[7] The majority of the judge's comments were directed toward his determination that Sala-

---

6. The facts concerning liability, *i.e.* whether Salamon was negligent, whether GLW is liable under a *respondeat superior* theory, etc., while relevant and material to the suit subsequently brought by Dennis, are neither relevant nor material to this declaratory judgement action.

7. The judge issued no written memorandum or order memorializing his oral ruling granting Progressive's motion for summary judgment as to the declarations sought in its complaint (*see* Note 3, above). The only written record of the judgment is a 13 December 2002 Notice of Recorded Judgment signed by the Clerk of the Circuit Court for Baltimore County indicating that a judgment in favor of Progressive was entered on 11 December 2002 and listing the "Amount of Judgment" as "Costs." Neither that Notice of Recorded Judgment, nor any other document indicating the existence of a declaratory judgment, was signed by the judge. *See* Md. Rule 2-601(a) ("Each judgment shall be set forth on a separate document.... Upon ... a decision by the court granting [] relief [other than costs or a specified amount of money], the court shall promptly review the form of the judgment presented and, if approved, sign it, and the clerk shall forthwith enter the judgment as approved and signed.").

Even were we to agree with the trial court's resolution of the substantive issue in this case, we still would be required to reverse the Circuit Court's judgment for failure to file a written declaratory judg-

mon's actions fell within the unambiguous language of the contractual "pizza exclusion," a point that Salamon essentially conceded. Salamon's main contention before the trial court, as before this Court, was that the exclusion was invalid as contrary to Maryland public policy. The trial judge gave the following substantive response to Salamon's "public policy" argument:

> "[I]n this case Progressive Insurance provides insurance to Mr. Salamon with the understanding that he's not going

---

ment defining the rights and obligations of the parties. *See Jackson v. Millstone*, 369 Md. 575, 593, 801 A.2d 1034, 1045 (2002).

"Once again, we are presented with a declaratory judgment action in which there is no written declaratory judgment. We have admonished trial courts that, when a declaratory judgment action is brought and the controversy is appropriate for resolution by declaratory judgment, the court must enter a declaratory judgment and that judgment, defining the rights and obligations of the parties or the status of the thing in controversy, must be in writing. It is not permissible for the court to issue an oral declaration. The text of the judgment must be in writing. *See Harford Mutual Ins. Co. v. Woodfin*, 344 Md. 399, 414–15, 687 A.2d 652, 659 (1997); *Ashton v. Brown*, 339 Md. 70, 87, 660 A.2d 447, 455 (1995); *Christ v. Department of Natural Resources*, 335 Md. 427, 435, 644 A.2d 34, 38 (1994). Nor, since the 1997 amendment to Maryland Rule 2–601(a), is it permissible for the declaratory judgment to be part of a memorandum. That rule requires that 'each judgment shall be set forth on a separate document.' When entering a declaratory judgment, the court must, in a separate document, state in writing its declaration of the rights of the parties, along with any other order that is intended to be part of the judgment. Although the judgment may recite that it is based on the reasons set forth in an accompanying memorandum, the terms of the declaratory judgment itself must be set forth separately. Incorporating by reference an earlier oral ruling is not sufficient, as no one would be able to discern the actual declaration of rights from the document posing as the judgment. This is not just a matter of complying with a hyper-technical rule. The requirement that the court enter its declaration in writing is for the purpose of giving the parties and the public fair notice of what the court has determined." *Jackson*, 369 Md. at 594–95, 801 A.2d at 1045–46 (quoting *Allstate v. State Farm*, 363 Md. 106, 117 n. 1, 767 A.2d 831, 837 n. 1 (2001)). *See also, e.g., Baltimore v. Ross*, 365 Md. 351, 358 n. 6, 779 A.2d 380, 384 n. 6 (2001); *Bushey v. Northern Assurance*, 362 Md. 626, 651–652, 766 A.2d 598, 611–612 (2001); *Maryland Ass'n of HMO's v. Health Services Cost Review Commission*, 356 Md. 581, 603, 741 A.2d 483, 495 (1999).

Because this error is not jurisdictional, this Court nonetheless may review, in its discretion, the merits of the present controversy. *Bushey*, 362 Md. at 651, 766 A.2d at 611. We elect to do so.

to use his car for business purposes, to deliver pizzas. And I don't think that anyone who would read the policy would have any doubt about that, that we don't provide coverage if you do that. Well, that was the contract. That's the contract. I don't see anything against public policy for an insurer to contract with an insured under those conditions. Yeah, we will provide you coverage as long as you don't use your car for commercial purposes. I don't see how that can be against public policy, [it] doesn't seem to me to be.

"One would have to wonder if an insurer can't make that a condition of a policy, a contract of insurance, what would all of our insurance rates be? If all of us could get a personal use policy and then use our cars to engage in business which involves the car, the use of the car, my God, what would the rates have to be? That may be a policy, a public policy consideration that would overcome any other, but I'm not deciding that, but I am saying that this was a contract.

"It was an unambiguous contract, it was clear, the contract was violated by Mr. Salamon. And Progressive does not have to provide coverage because it is not provided for in the contract that was entered into between the parties. So, the motion for summary judgment ... is granted."

The judge, however, failed to address the true gravamen of Salamon's argument: that Maryland's compulsory insurance law, codified at Maryland Code (1977, 2002 Repl.Vol.), §§ 17–101 to 17–110 of the Transportation Article and Maryland Code (1995, 2002 Repl.Vol.), §§ 19–501 to 19–516 of the Insurance Article, renders void the exclusion that Progressive relied upon to deny Salamon coverage and defense. As we shall explain, Salamon was correct in arguing that Progressive may not deny him what he purchased, the statutory minimum levels of coverage, even though the accident occurred while he was employed as a pizza delivery driver. The trial judge's determination to the contrary was erroneous as a matter of law.

## A.

The 73rd Act of the 1972 session of the Maryland General Assembly was a "comprehensive law that, among other things, inaugurated compulsory insurance or other required security, established [the Maryland Automobile Insurance Fund] as an insurer of last resort, prohibited the arbitrary cancellation and non-renewal of motor vehicle insurance policies, and required policies to contain collision and [personal injury protection] coverage." *Maryland Auto. Ins. Fund v. Perry*, 356 Md. 668, 674, 741 A.2d 1114, 1117 (1999). Those provisions are now codified at title 19, subtitle 5 of the Insurance Article and title 17, subtitle 1 of the Transportation Article. The portions of that statute relevant to this case are those intended to "make certain that those who own and operate motor vehicles in this State are financially responsible. This legislative policy has the overall remedial purpose of protecting the public by assuring that operators and owners of motor vehicles are financially able to pay compensation for damages resulting from motor vehicle accidents." *Pennsylvania Nat'l Mut. Cas. Ins. Co. v. Gartelman*, 288 Md. 151, 154, 416 A.2d 734, 736 (1980) (citations omitted).

The General Assembly advanced its goal of assuring that every motorist has adequate insurance by enacting provisions requiring each vehicle owner to obtain motor vehicle insurance or a substitute security, limiting the ability of insurers to cancel or refuse to renew insurance policies, establishing the Maryland Automobile Insurance Fund (MAIF) as an insurer of last resort, and requiring the Motor Vehicle Administration to suspend the registration of any motor vehicle for which the required insurance or security lapsed until replaced. 1972 Md. Laws, Chap. 73. Maryland Code (1977, 2002 Repl.Vol.), § 17–103 of the Transportation Article now reads:

"The security required under this subtitle shall provide for at least:

(1) The payment of claims for bodily injury or death arising from an accident of up to $ 20,000 for any one person and up

to $ 40,000 for any two or more persons, in addition to interest and costs;

(2) The payment of claims for property of others damaged or destroyed in an accident of up to $ 15,000, in addition to interest and costs;

(3) Unless waived, the benefits described under § 19–505 of the Insurance Article [personal injury protection coverage] as to basic required primary coverage; and

(4) The benefits required under § 19–509 of the Insurance Article [uninsured motorist coverage] as to required additional coverage."

More than thirty years after the General Assembly originally enacted compulsory insurance provisions, the requirement that every driver maintain at least these minimum levels of motor vehicle insurance remains an integral part of Maryland statutory law and public policy. Any portion of a motor vehicle insurance policy that is inconsistent with this statutory scheme is void and unenforceable. *Lewis v. Allstate Ins. Co.*, 368 Md. 44, 47, 792 A.2d 272, 274, (2002). *See also Enterprise Leasing Co. v. Allstate Ins. Co.*, 341 Md. 541, 550, 671 A.2d 509, 514 (1996) ("insurance policy exclusion clauses that are inconsistent with the public policy of this State" are invalid).

"In light of the comprehensive nature of the statutory provisions regulating motor vehicle insurance, and the various limitations, conditions, exceptions and exclusions expressly authorized by the Legislature, this Court has consistently "held invalid insurance policy limitations, exclusions and exceptions to the statutorily required coverages which were not expressly authorized by the Legislature."

*Lewis*, 368 Md. at 48, 792 A.2d at 274 (quoting *Van Horn*, 334 Md. at 686, 641 A.2d at 203).

This Court consistently has declared invalid insurance policy exclusions that excuse or reduce the insured parties' coverage below the statutory minimum level where such exclusions are not authorized explicitly by the General Assembly. Examples of this are legion. A policy provision that reduced the amount

of uninsured motorist benefits by the amount of money the insurer previously had paid to the insured under a medical payments endorsement in the policy was not authorized by statute and was, therefore, invalid. *Lewis,* 368 Md. 44, 792 A.2d 272. Where no statute authorized a reduction in coverage for payments from other insurers, an automobile insurance provider was required to pay personal injury protection coverage even though the insured's treatments already had been paid for by his health insurance provider. *Dutta v. State Farm Ins. Co.,* 363 Md. 540, 769 A.2d 948 (2001). The exclusion of vehicles "Owned or operated by a self-insurer" or "Owned by any governmental unit or agency" from the definition of "uninsured/underinsured vehicles" for the purposes of the state's compulsory uninsured/underinsured coverage requirement was unauthorized and void. *West Am. Ins. Co. v. Popa,* 352 Md. 455, 723 A.2d 1 (1998). In *Enterprise Leasing,* 341 Md. 541, 671 A.2d 509, a car rental company had not authorized its lessee to allow third party drivers to drive the rental car without the company's authorization. Nevertheless, the car rental company was liable as a self-insurer for an accident caused by a third-party driver, who was driving the vehicle with the lessee's permission, but without the car rental company's permission, because the General Assembly had not authorized an exclusion of this type.

Similarly, a moving company's insurer was liable to provide coverage for the injuries of one of the moving company's employees who was injured by a truck driven by another employee because the "fellow employee" exclusion in the policy was not authorized by statute. *Larimore v. American Ins. Co.,* 314 Md. 617, 552 A.2d 889 (1989). Although the General Assembly had authorized insurers to reduce their benefits by the amount of worker's compensation payments the insured party already had recovered, an exclusion that reduced the insured party's benefits by the amount of worker's compensation the insured party was entitled to receive *in the future* was unauthorized and void. *Gable v. Colonial Ins. Co.,* 313 Md. 701, 548 A.2d 135 (1988). The "household

exclusion," preventing one family member's recovery for injuries sustained in an accident with another member of the same household, was held to be unauthorized and invalid. *Jennings v. Gov't Employees Ins. Co.*, 302 Md. 352, 488 A.2d 166 (1985).

Where an insurer had notice of a suit between its insured and the uninsured driver of the other vehicle involved in an accident, it could not rely on a "consent to sue" clause in its policy to refrain from paying the judgment against the uninsured driver because "consent to sue" clauses were not authorized by the General Assembly. *Nationwide Mut. Ins. Co. v. Webb*, 291 Md. 721, 436 A.2d 465 (1981). A personal injury protection exclusion that denied coverage when an accident occurred while the insured was riding a "motor vehicle owned by the named insured ... which is not an insured motor vehicle" has been held invalid. *Gartelman*, 288 Md. 151, 416 A.2d 734. An insurer was not authorized to require the insured party to secure a judgment against a tortfeasor before recovering uninsured motorist benefits. *Reese v. State Farm Mut. Auto. Ins. Co.*, 285 Md. 548, 403 A.2d 1229 (1979). An insurer was not entitled to limit uninsured motorist coverage to situations in which there was actual contact between the insured vehicle and a phantom vehicle. *State Farm Mut. Auto. Ins. Co. v. Maryland Auto. Ins. Fund*, 277 Md. 602, 356 A.2d 560 (1976); *see also Lee v. Wheeler*, 310 Md. 233, 528 A.2d 912 (1987) (actual contact requirement was invalid even though the accident occurred outside the State of Maryland).

Where the General Assembly authorized exclusions or exemptions, we upheld contractual terms that excused or reduced an insurer's coverage below the statutory minimums. In *Maryland Automobile Insurance Fund v. Sun Cab Co.*, 305 Md. 807, 506 A.2d 641 (1986), we concluded that the General Assembly had exempted taxicabs from certain of the compulsory insurance provisions, and therefore they were not required to carry (or be covered by) uninsured motorist insurance. In *Nationwide Mutual Insurance Company v. Miller*, 305 Md. 614, 505 A.2d 1338 (1986), an insurer was not required to pay uninsured motorist benefits to a passenger in a vehicle driven by the husband of the vehicle's owner because the

husband/driver, who had his own insurance with another carrier, was excluded under that vehicle's coverage as authorized by statute. In *DeJarnette v. Federal Kemper Insurance Company*, 299 Md. 708, 475 A.2d 454 (1984), we upheld an exclusion for injuries sustained while using a motorcycle, an exclusion authorized specifically by statute.

Progressive argues that, for analytical purposes, we implicitly have distinguished between insurance policy exclusions "pertaining to *classes* of insureds, as opposed to exclusions pertaining to *acts* of individual insureds," upholding exclusions based on actions, but invalidating those that leave entire classes of people uninsured. Although Progressive finds some support in a footnote in *Jennings*, this argument is not supported by the bulk of our cases relating to insurance exclusions or compulsory insurance requirements.

In *Jennings*, we distinguished a prior case with the following footnote:

"GEICO also argued that this Court's decision in *National Grange Mut. Ins. v. Pinkney*, 284 Md. 694, 399 A.2d 877 (1979), in which this [C]ourt declined to adopt the so-called "liberal" rule in interpreting omnibus clauses, stands for the proposition that adoption of mandatory liability insurance does not alter prior Maryland case law regarding liability insurance. This is an overbroad interpretation of *Pinkney*. The instant case deals with a policy exclusion that would exclude classes of people. For example, family members of the named insured's household as well as the named insured are precluded from recovery. The person qua person is precluded from recovery. *Pinkney*, on the other hand, dealt with an exclusion based upon an action taken by a person—in that case, acquiring permission, or failing to do so, to drive the vehicle. In *Pinkney*, this Court stated "that the public policy of this State as enunciated by the General Assembly is that there should be liability coverage ... for any one person...." 284 Md. at 704, 399 A.2d [at 882]."

*Jennings*, 302 Md. at 360 n. 9, 488 A.2d at 170 n. 9. In no other case, however, has this Court made such a distinction

between actions and classes, nor has any exclusion that excused or reduced benefits below the statutory minimums, and that was not authorized by the General Assembly, been deemed valid on this basis. To the extent that the *Jennings* footnote makes our analysis of arguments challenging automobile insurance exclusions unclear, we clarify today that we shall not uphold any exclusion, not authorized by the General Assembly, that excuses or reduces benefits below the statutory minimums. There is no meaningful class/action distinction to be made in this analysis.[8]

*Pinkney*, the case distinguished in the footnote in *Jennings*, is best understood as a case interpreting an omnibus clause in an insurance contract, rather than one focusing on an exclusion. An omnibus clause in an automobile insurance policy extends coverage to a third party who operates the vehicle with the permission of the named insured. *See Universal Underwriters Ins. Co. v. Lowe*, 135 Md.App. 122, 138 n. 10, 761 A.2d 997, 1006 n. 10 (2000). This Court has treated omnibus clauses differently with regard to the requirements of the compulsory insurance law, such as personal injury protection and uninsured motorist coverage, because the dominant purpose of an omnibus clause is "an intent to extend coverage." *DeJarnette*, 299 Md. at 714, 475 A.2d at 457. In *Pinkney*, we declined to follow the "liberal rule"[9] of omnibus

---

**8.** In fact, a class/action distinction is neither useful nor relevant. Any group of individuals who have acted in the same manner may be grouped in a class. For example, all of the individuals who have signed insurance contracts containing a particular exclusion may be called the class of persons who have done so. Alternatively, they may be regarded as individuals who have taken the action of signing contracts that contained that particular term.

**9.** The "liberal rule" or "hell or high water rule" requires that,

if the vehicle was originally entrusted by the named insured, or one having proper authority to give permission, to the person operating it at the time of the accident, then despite hell or high water, such operation is considered to be within the scope of the permission granted, regardless of how grossly the terms of the original bailment may have been violated. This rule is also, albeit less colorfully, known as the initial permission rule.

*Pinkney*, 284 Md. at 698, 399 A.2d at 879 (citation omitted).

clause interpretation, which would have invalidated all "scope of permission" [10] clauses. Instead, we held that such clauses could be valid and, when they are, they should be interpreted in the same manner as any other term in an insurance contract. *Pinkney,* 284 Md. at 706, 399 A.2d at 883. *See also BGE Home Products & Services, Inc. v. Owens,* 377 Md. 236, 833 A.2d 8 (2003) (declining to read a "scope of permission clause" into a self-insurance guarantee where it did not appear, but implying that "scope of permission clauses" are still valid where express).

### B.

With that background in mind, we turn to the exclusion Salamon challenges. Progressive argues that it is entitled to deny Salamon coverage because, at the time of his accident, he was delivering food for compensation in violation of the terms of the insurance contract. Because Progressive seeks to deny all coverage to Salamon, rendering him uninsured for the accident, the exclusion reduces coverage below the statutory minimum levels.

The "pizza exclusion" has not been authorized by the General Assembly. Progressive has not pointed to any Maryland statute that either expressly or implicitly gives insurers the

---

**10.** A "scope of permission" or "permissive user" clause limits coverage under an omnibus clause to claims that arise while the third party is operating the vehicle within the scope of the permission granted by the named insured. When a vehicle is covered under the typical "scope of permission" clause,

> the vehicle must be used for a purpose reasonably within the scope of the permission granted, within the time limits imposed or contemplated by the parties, and operated within geographical limits so contemplated.... Of course, this does not mean that every immaterial deviation would automatically cut off the policy protection. It merely declares that such use must be reasonably within the intention of the parties at the time consent is given, or a use to which the insured would have consented had he known of it.

*Pinkney,* 284 Md. at 698–99, 399 A.2d at 879 (citation omitted). Omnibus clauses and "scope of permission" restrictions do not always contain the same language and should not all be interpreted in the same way. *See* Note 2 above.

authority to add such an exclusion to their insurance contracts, and thereby to reduce or eliminate benefits below the statutory minimum levels. Upon review of title 17 of the Transportation Article and title 19 of the Insurance Article of the Maryland Code, we too are unable to find any such provision.[11] Accordingly, Progressive's commercial use exclusion in Salamon's policy is invalid.

*JUDGMENT OF THE CIRCUIT COURT FOR BALTIMORE COUNTY REVERSED. CASE REMANDED TO THAT COURT WITH DIRECTIONS TO GRANT APPELLANT'S MOTION FOR SUMMARY JUDGMENT, DENY APPELLEE'S MOTION FOR SUMMARY JUDGMENT, AND ENTER A DECLARATION OF THE PARTIES' RIGHTS. APPELLEE TO PAY COSTS.*

---

11. We note that the General Assembly does appear to have anticipated some commercial uses by exempting certain vehicles from the requirements of title 17, subtitle 1 of the Transportation Article:

"This subtitle does not apply to the following vehicles and their drivers:
(1) Farm equipment or special mobile equipment incidentally operated on a highway or on other property open to the public; or
(2) A vehicle operated on a highway only to cross the highway from one property to another."

Md.Code (1977, 2002 Repl.Vol.), § 17–102 of the Transportation Article. "Special mobile equipment" is defined in § 11–159 of the Transportation Article:

(a) "Special mobile equipment" means . . . a vehicle that:
(1) Is not used primarily for highway transportation of people or property; and
(2) Is operated or moved on a highway only as an incident to its nonhighway use.
(b) "Special mobile equipment" includes a road construction or maintenance machine, mobile crane, ditchdigger, well driller, concrete mixer, jobsite office vehicle, or portable power generator.

Md.Code (1977, 2002 Repl.Vol.), § 11–159 of the Transportation Article. This presumably means that a person cannot expect to be covered under the compulsory automobile insurance statute for accidents caused while operating a bulldozer.